[Civ. No. 7138. First Appellate District, Division One.—July 2, 1930.]

RAYMOND E. MAST, Respondent, v. ROY CLAXTON, Appellant.

Hadsell, Sweet & Ingalls and Snook, Snook & Chase for Appellant.

Kilpatrick & Goodman for Respondent.

DEASY, J., *pro tem.*—Respondent brought this action to recover the sum of $100,000 as damages for personal injuries received by him in a collision between his automobile and the automobile of appellant. The case was tried before a jury, which rendered a verdict in respondent's favor and against appellant for the sum of $20,000. From the judgment entered on said verdict and from the order denying a new trial this appeal was taken.

Briefly, the essential facts are as follows: Respondent, on the twentieth day of December, 1928, was driving a Dodge automobile in an easterly direction on the highway between Tracy and Stockton. At or about the hour of 8 o'clock in the morning he had reached a point on the highway approximately two and one-half miles east of Tracy. Appellant was driving in a westerly direction on said highway in a Packard automobile. The night before had been foggy, and the morning was quite cold. There is some conflict in

the evidence as to whether there was frost or ice on the highway, but all the witnesses agree that the road was slippery. At the place referred to the two automobiles came into collision and respondent's automobile was badly wrecked, and he received serious and permanent injuries.

As is usual in cases of this nature, there is a very sharp conflict in the evidence, and as to most of the evidence a very substantial conflict.

Appellant moved for a new trial on the ground that the amount of the verdict was excessive, but in his opening brief he has abandoned that ground. He also concedes that as to his alleged negligence there was such a conflict in the evidence that this court is bound by the findings of the jury in that matter.

The first point urged by appellant as a ground for a reversal of the judgment is that respondent was guilty of contributory negligence as a matter of law in failing to bring his automobile to a stop when he saw the automobile of appellant swerving from side to side, and had plenty of time to do so.

According to the testimony of respondent, he first noticed appellant's automobile when it was from 700 to 1,000 feet away from his car. That at that time appellant's car was wobbling or shimmying, or zigzagging from side to side, but apparently on appellant's right side of the road until about half the distance between them had been traversed. Then it appeared to come over or wobble to respondent's side of the road several times. He stated that appellant's car was going at a speed which he estimated was from sixty to seventy miles an hour when he first saw it, and that he was going about twenty-five or thirty miles an hour before seeing the other car, and that he then slowed down to about fifteen or eighteen miles an hour, at which speed he was traveling at the time of the collision. He also testified that he turned to his right after seeing the other car, and that his right wheels and most of his car were off the paved part of the road and on the gravel at his right side of the road prior to and at the time the two cars came together. He testified that he did not stop his car, but that it was moving forward in the position indicated up to the moment of the impact. With some discrepancies as to rates of speed and

distance, he was corroborated by the testimony of his wife, who was riding with him.

The situation disclosed by this testimony was complicated by the fact that another automobile driven by the witness J. A. Brichetto was approaching respondent from the east and in advance of appellant's car. Mr. Brichetto intended to turn off the highway and into a driveway leading to his mother's home. This driveway was very close to the point of the impact, and Mr. Brichetto, seeing the cars of appellant and respondent approaching, turned to his right and was practically off the paved portion of the road before the collision took place. Appellant testified that as he approached the Brichetto car he turned to the left to pass it, and that then his car got out of control, due to the icy condition of the pavement, and that he proceeded in a slipping or skidding position westerly on the highway for some distance. According to respondent, he saw the other car apparently out of control some distance away from him, and that he continued along in his position practically off the highway, believing that appellant's car would clear him. The evidence of appellant's witnesses is in conflict with that of respondent as to speeds and distances and the condition of the roadway and as to respondent's position on the road. Some of them testified that respondent's car skidded around on the road, and that it was not on the right side of the road or in the position where respondent placed it by his testimony at any time prior to the collision. They also testified that respondent was driving at about twenty-five or thirty miles an hour, and that appellant's speed was about the same rate.

To review in minute detail all of the evidence concerning the collision would unduly lengthen this opinion, and, furthermore, it is unnecessary, because the finding of the jury as to appellant's negligence, based as it is upon substantially conflicting evidence, is conclusive.

The evidence referred to heretofore is in substance the basis for the claim that respondent was guilty of contributory negligence. Many authorities are cited by appellant in support of this point. We are entirely in accord with the principles of law referred to, but in none of the cited cases do we find any support for the claim of appellant that respondent should have stopped his car the moment that he

observed appellant's car wobbling or zigzagging along the road 700 or 1,000 feet away from him. No two cases of automobile collisions are exactly alike, and each must be decided upon its own state of facts.

According to the well-settled law of this state, negligence is, generally speaking, a matter of fact, and the same is true of contributory negligence. Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference, and that inference points unerringly to the negligence of the plaintiff contributing to his injury. (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125]; *Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500]; *Flores* v. *Fitzgerald*, 204 Cal. 374 [268 Pac. 369].)

In the instant case, taking into consideration all of the testimony, it is reasonable to conclude that any one of several factors might have caused the collision in question. Conceding, as we must, that appellant was negligent, what conclusions can be drawn from the conduct of respondent? Reviewing all of the testimony, it is apparent that a very short interval of time, a matter of a few seconds, elapsed between the time that respondent saw appellant's car and the impact.

Respondent might have stopped immediately, he might have proceeded along the road in the position he occupied when he first saw appellant's car approaching, he might have turned off the paved highway, as he did, or he might have stopped at some point on the road between the position he occupied when he first saw the other car and the point of impact. But can it be said that reasonable minds might not differ as to the course he should have taken? He had a right to assume, until the contrary appeared, that appellant would be able to control his car and keep on his own side of the road. He did, as a matter of fact, turn to his right and off the paved portion of the road, according to the finding of the jury, which resolved the conflict on that point in his favor.

Appellant seeks to apply the imminent peril doctrine against respondent, but we cannot say that it should so operate as a matter of law. On the contrary, if correctly applied to the facts, it completely exonerates respondent of the charge of contributory negligence as a matter of

law. ▮ It is very easy to sit down calmly and dissect the evidence in the case and conclude that respondent might have done something other than he did and have escaped the collision, but that is not the test.

In time of imminent danger, a person is not necessarily negligent because he fails to take every precaution or adopt every means of safety that a careful calculation subsequently shows he might have taken or adopted.

The Supreme Court of this state in the case of *Schneider* v. *Market Street Ry. Co.*, 134 Cal. 482 [66 Pac. 734, 738], said as follows:

"If the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions, or making an unwise choice, under this disturbing influence, although if his mind had been clear he might have done otherwise. This is especially true if the peril is caused by the defendant's fault; and of such case it is said, 'even if, in bewilderment, he runs directly into the very danger he fears, he is not in fault. The confusion of mind, caused by such negligence, is part of the injury inflicted by the negligent person.' "

In different language this doctrine has been affirmed and reiterated by the cases in this state continuously since the time of that decision, and the principle has become so strongly the settled law of the state that it cannot be questioned.

In the instant case it cannot be held that respondent is guilty of contributory negligence as a matter of law, and the trial court was correct in submitting the case to the jury on that question.

The second point urged by appellant as a ground for reversal is the alleged misconduct of H. F. Nielson, one of the jurors in the case, and of respondent's counsel in connection therewith.

The facts in connection with this point are as follows: On the examination of the jurors on *voir dire* the court interrogated the first twelve jurors collectively. Among the questions asked was the following:

"Q. Does the relationship of client and attorney exist between any member of the jury panel or any member in

the jury box and any of the attorneys, or either the plaintiff or defendant?''

Following this question a number of others were asked by the court, and several of the original twelve jurors were excused. The name of H. F. Nielson was drawn, and he entered the jury-box, and the following examination took place:

''The Court: Q. Mr. Nielson, you heard the general questions that were asked by the court · and also by counsel, did you?

''Mr. Nielson: A. Yes, sir.

''Q. And if those same questions were asked you at this time, would your answers be the same as the other members of the jury panel? A. They would, sir.

''Mr. Goodman: Q. Do you know of any reason why you could not fairly and impartially sit as a juror in this case, Mr. Nielson? A. I do not.

''Q. And try it the same as any other kind of a suit, would you? A. Yes.

''Mr. Goodman: That is all.

''Mr. Snook: No further questions.''

In support of his motion for a new trial, appellant filed an affidavit sworn to by his attorney, Charles Wade Snook, from which it appeared that some time prior to the trial of the instant case respondent's counsel, Booth B. Goodman, had represented said juror H. F. Nielson in the trial of a suit brought by the latter to recover damages, and had obtained a judgment in his favor which had never been satisfied. The affidavit also shows that at the time said Nielson was being examined as a prospective juror, appellant's counsel were not aware of these facts. Appellant urges that the failure of said Nielson and of respondent's counsel to disclose the facts stated was misconduct on their part sufficient to justify a new trial, and that the failure of the trial court to grant a new trial was error which should cause a reversal on this appeal.

In reply to this affidavit respondent filed two affidavits, which were considered on the motion for a new trial, one sworn to by Booth B. Goodman and the other sworn to by Lionel B. Benas. In substance the affidavit of Mr. Goodman is to the effect that he met H. F. Nielson in May, 1928, when he conducted a trial for said Nielson lasting less than

a day and that said Nielson recovered a judgment for $680. That when said suit was filed in October, 1927, one Lionel B. Benas was associated with Mr. Goodman and in addition was conducting a law practice for himself and on his own account, and that said H. F. Nielson was a client of Mr. Benas, and that the only business done by Mr. Goodman for said H. F. Nielson was the trial above referred to, and that all business connected with said case of H. F. Nielson, except the preparation of pleadings and the trial itself, was handled by Mr. Benas, and that for these reasons Mr. Goodman never became intimately acquainted with said Nielson, and failed to recognize him when he was called as a juror, and did not know at that time that he had ever met Nielson, and did not learn the true facts relating thereto until long after the trial of the instant case. The affidavit also shows that the judgment obtained by Nielson has never been collected by reason of the insolvency of the judgment debtor. That after the obtaining of said judgment Mr. Goodman turned over all matters and papers in connection therewith to said Lionel B. Benas, and that some time later he was informed by Mr. Benas that Nielson was displeased by reason of the failure to collect the judgment. The affidavit of Mr. Benas is in substance to the same effect.

Appellant has cited many cases with reference to the disqualification of jurors and their misconduct, but while the principles referred to in these cases are undoubtedly the law, we fail to see their applicability to this case. In some of them jurors had expressed opinions about the case, and in others jurors had wilfully concealed facts.

In order to justify the granting of a new trial on this ground it must be shown that some prejudice resulted to the appellant, or that there was a wilfully false and untruthful answer given by the juror, which would lead to the inference that the juror was animated by a dishonest motive in qualifying.

In *People* v. *Galloway*, 202 Cal. 81 [259 Pac. 332, 336], in discussing the question of granting a new trial because of misconduct of a juror in untruthfully answering questions on *voir dire*, the court said: "In other words, a safe rule applicable to the situation would be that the court would not be warranted in setting aside a verdict on account of such misconduct unless from a review of the entire

case it can be seen that the accused has not only been diligent but has suffered an injustice by reason of the action of such juror.''

In *Kimic* v. *San Jose, Los Gatos etc. R. Co.*, 156 Cal. 379, the court said, at page 398 [104 Pac. 986, 994] :

''However strictly the decisions may lay down the rule as to the effect of misconduct of the jury that may well have prejudiced the parties, it is settled in this state that a new trial will not be granted on that ground where the misconduct was of such trifling nature that it could not in the nature of things have been prejudicial to the moving party, and that where it appears that the fairness of the trial has been in no way affected by such impropriety, the verdict will not be disturbed.''

Also, in *Siemsen* v. *Oakland, S. L. & H. Elec. Ry. Co.*, 134 Cal. 494, the court said, at page 498 [66 Pac. 672, 673] :

''While the exercise of a liberal discretion in the granting of new trials is recognized, it does not follow that an order must always be upheld, where an examination of the record discloses that the misconduct was of such trifling nature that it could not, in the nature of things, have been prejudicial to the moving party. Where it appears that the fairness of the trial has been in no way affected by such impropriety, the verdict will not be disturbed.''

In *Riley* v. *Davis*, 57 Cal. App. 477, the court said, at page 486 [207 Pac. 699, 703] :

''As to the contention of appellant that the question involves a constitutional right which cannot be reached by said section 4½, it is sufficient to quote the following: 'The manner and method of summoning a jury is a subject matter of legislative control rather than of constitutional provision, the benefit of which may be waived.' (*People* v. *Nakis*, 184 Cal. 105 [193 Pac. 92].) But even if it were a constitutional right that was invaded and it appeared from an examination of the record that there was no 'miscarriage of justice,' the error would be disregarded on appeal.''

■ Under the rules so laid down by the foregoing cases, the question was entirely within the discretion of the trial court. It had the entire matter before it, heard and participated in the examination of the juror, and was in a better position to determine whether or not the situation worked to the prejudice of appellant than is this court. In

order, however, that appellant's point should not seem to have received only a casual consideration by this court, we have carefully examined the entire record, including the evidence, and have concluded that even if the juror and respondent's counsel were technically guilty of misconduct, the rights of appellant were not prejudiced thereby in any way. Furthermore, we do not believe that either the juror Nielson or respondent's counsel were guilty of misconduct. It was undoubtedly a lapse of memory on the part of both, and the record is absolutely devoid of anything that would tend to show any wilful misconduct.

Appellant's third point relates to the matter of instructions given and refused. The following instruction was given by the court:

"You are instructed that contributory negligence is an affirmative defense, and therefore the burden of proof as to such a defense is upon the defendant and it is necessary for the defendant to prove by a preponderance of the evidence two things: first, he must prove that the plaintiff was himself guilty of negligence; second, the defendant must also prove that such negligence on the part of the plaintiff proximately contributed to the injuries complained of.

"The failure of the defendant to prove either one of the two elements stated, causes the defense of contributory negligence to fall. In other words, even though you might find from the evidence that the plaintiff was himself guilty of negligence, yet such finding will not defeat plaintiff's right to recover unless you further find that his negligence contributed to his injuries, provided always that you also find that the defendant was guilty of negligence proximately resulting in the accident complained of."

It is argued that the first sentence of the second paragraph above quoted is an instruction on a matter of fact, and that it told the jury as a matter of fact that appellant's plea of contributory negligence had not been sustained by him. The language complained of is as follows:

"The failure of the defendant to prove either one of the two elements stated, causes the defense of contributory negligence to fall."

Dissociated from its context, appellant claims that the jury were told in that one sentence that appellant's defense

of contributory negligence had failed. Even if it were possible to consider that one sentence alone, as appellant would have us do, we cannot agree with his contention. But it has become so well settled in this state by any number of decisions that the instructions must be taken and considered as a whole, that it needs no citation of authorities to determine that not only is the objection entirely without merit, but that it borders on the frivolous.

■ The claim is also made that the instruction just referred to is incorrect because it fails to take into consideration the fact that negligence on the part of plaintiff is a matter of defense to be proved affirmatively by the defendant "unless it can be shown or inferred from the evidence given in support of plaintiff's case." We have placed in quotations the matter that appellant claims should have been added to the instruction.

An inspection of the record shows that in the instructions given by the court on its own motion, after defining contributory negligence correctly, the court instructed the jury that "unless it is shown by, or may be inferred from, the evidence offered by plaintiff, such negligence is a matter of defense to be proved affirmatively by defendant."

If anything were necessary to demonstrate the utter frivolity of appellant's objection to the instruction complained of and under consideration, the matter last referred to supplies that need to the utmost degree. When the appellate courts of this state have so repeatedly laid down correct rules for the interpretation of instructions to juries, it seems entirely unnecessary that they be constantly required to do a work of supererogation in going over the same ground again and again.

■ Appellant also claims error in the refusal of the court to give certain instructions at his request. An examination of the record, particularly of the instructions, demonstrates that the principles proposed in the refused instructions were amply covered by the trial court in other parts of its charge to the jury, and, therefore, no repetition was necessary or proper.

We find no error in the record. The appellant had a fair trial, and the amount of the verdict was very reasonable in view of the serious nature of respondent's injuries, which fact was not questioned by appellant on this appeal, and

also in view of the fact that appellant concedes that the verdict of the jury has foreclosed this court from considering any conflict in the evidence as to his negligence, and that that matter stands established as a fact by the verdict of the jury.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.