[Civ. No. 8777.   Third Dist.   Mar. 8, 1956.]

ATRAL A. ROSS et al., Appellants, v. HOWARD NEWTON LIGHTNER, Respondent.

Cardozo, Trimbur & Nickerson for Appellants.

Vernon F. Gant for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment entered upon a jury's verdict in favor of the defendant in a wrongful death action.

Appellants are the surviving wife and two minor children of James Ross who died of injuries sustained in an accident occurring at the intersection of Sycamore and Eucalyptus Avenues near Patterson. The deceased, James Ross, was driving a Chevrolet sedan east on Sycamore. The respondent was traveling north on Eucalyptus in a Ford sedan. Each was alone and there was no other traffic. It was daylight and the weather was dry and clear.

Respondent testified that when he first saw the deceased, they were each traveling at a speed of between 40 and 45 miles per hour and were at an equal distance of from 50 to 60 feet from the point of impact. Respondent claimed that he immediately applied his brakes but that the deceased's automobile, which did not lay down any skid marks, maintained its speed of from 40 to 45 miles per hour. The vehicles came together with such force that respondent's car veered and hit a power pole splitting it in two. The deceased's automobile came to rest on its side about 60 feet north of the center of the intersection. Respondent placed the point of impact at approximately the center of the intersection. A highway patrolman who investigated, but did not witness, the accident testified that the point of impact was within the east half of the intersection, approximately 2½ to 3 feet north of its southern boundary and that the deceased's automobile had traveled approximately 17 or 18 feet across the intersection when it was struck by respondent's car. His filed report made at the scene read in part as follows: "Point of impact was just a few inches east of the center line of Sycamore Avenue and approximately in line with center of Eucalyptus Avenue." The officer's report, therefore, as to the point of collision agreed with the testimony of re-

spondent and conflicted with the officer's oral testimony. He explained on cross-examination that he changed his opinion after examining photographs of the scene of the accident.

The trial court instructed the jury as follows:

"Mr. A. A. Hansen, a member of the California Highway Patrol, was called as a witness in this case and was permitted to express his opinion with respect to the point of impact, the speed of the two vehicles and other matters. You are instructed that you are entitled to give the opinion or opinions expressed by Mr. Hansen, such credit or weight as you in your independent judgment feel that they are entitled to receive. You are not bound to accept his opinion or opinions as so expressed and may totally disregard his opinions in favor of your own opinion, based on the facts adduced by the evidence, if you feel that the reasons given by Mr. Hansen were insufficient. In other words, the opinion of an expert is no better than the reasons given for such opinion. You are to carefully weigh the reasons given by the witness and decide for yourself whether or not the opinion so expressed is supported by the reasons given."

Appellants argue that, in view of the record, the giving of the quoted instruction was erroneous and prejudicial. It appears that upon cross-examination, and also in the course of argument, counsel for the respondent vigorously sought to discredit and belittle Officer Hansen, upon whose testimony the appellants' case mainly rested. Much emphasis was put upon the conflict between his written report and his testimony at the trial in respect to the location of the point of impact and upon his forming an opinion thereon from photographs. He was asked if he had not "made only a cursory examination," if he had prepared a "false and untrue" report and if he had not formed his final opinion when he was "out of perspective." Counsel remarked that he knew there had "been a lot of shenanigans going on" and that the officer "had been sold a bill of goods."

Undoubtedly, the attack based upon the conflict between the officer's testimony and his report was vigorous and at times scathing. But we do not think that it rendered erroneous the giving of the quoted instruction. Appellants contend that it singled out the officer's testimony unduly, and amounted to a special cautionary instruction directed at his credibility. The court had given one general instruction on the subject of expert testimony. It is true that in the instruction directed at the testimony of Officer Hansen the

court told the jury they were to "carefully" weigh the reasons given by the officer for his opinion. Considered abstractly this was not error. The task of a jury requires careful consideration by them in weighing evidence. Considered in context we have this situation. While viewing the scene of the accident, when the cars were still where they had come to rest and marks on the cars and on the road were fresh, the officer, in the regular performance of his duty, had formed and expressed an expert's opinion as to the point of collision and the manner of impact. The same expert, working thereafter, so he said, from photographs taken by others, materially changed his opinion. We think this unusual situation merited the comment contained in the instruction, and justified any singling out of the officer's testimony.

Appellants' assignments of error based on several instances of alleged prejudicial misconduct on the part of opposing counsel do not merit extended discussion. Appellants maintain that in the course of the final argument to the jury respondent's attorney stated that Officer Hansen "had been sold a bill of goods." However, the counsel's argument has not been made a part of the record. Therefore, any alleged errors committed in the course of such unreported argument cannot be here considered. We fail to see how or in what manner prejudice ensued, as claimed, from the remark: "Perhaps you will concede that there are stop signs along Sycamore now." It was admitted that there were no stop signs at the time of the accident and the observation as to the changed condition was merely irrelevant and not prejudicial. Appellants complain that respondent's counsel persisted in offering inadmissible evidence and in the course of so doing made a highly prejudicial remark. The incident complained of arose after strenuous cross-examination of Officer Hansen. He had been questioned at length as to his written report, part of which had been read into the record. The report was then offered in evidence and appellants interposed a general objection which was sustained. Respondent's counsel then asked if he could not impeach the witness. The following then occurred:

"MR. CARDOZO: Mr. Gant knows better than that.

"MR. GANT: Let me address the court, I have a right tô.

"MR. CARDOZO: Well, let me make my objection. You have been practicing law long enough to know that you can't do that.

"Mr. Gant: Let's leave the personalities out of this, who has been practicing and who hasn't been practicing law, I have been practicing law long enough to know *there has been a lot of shenanigans going on around here.*" (Emphasis added.)

Appellants assigned this remark as prejudicial misconduct and requested that the jury be instructed to disregard the italicized portion of Mr. Gant's statement. This the court refused specifically to do, but remarked:

"It may be expected at times there will be little differences between counsel, and the officer and counsel and perhaps others, like this, and I know the jury will disregard surely and certainly these differences, and let's take the evidence as it comes and let's try to get along here in as easy a manner as possible."

It is obvious that appellants' charge that respondent "persisted" in offering the report in evidence is unfounded. Although the statement that "a lot of shenanigans" had been going on would have been better left unsaid, we do not deem it of sufficient moment to have caused a miscarriage of justice, and it cannot, therefore, serve as a basis for reversal of the judgment. (Cal. Const., art. VI, § 4½.) Additionally, the court's remarks to the effect that he knew the jury would disregard the differences that arose between counsel and witnesses and between counsel and opposing counsel amounted in substance to the requested admonition.

We find no merit in appellants' contention that certain of the instructions on right of way were directed at the conduct of the deceased and emphasized his alleged contributory negligence. One of the instructions specifically named the respondent, as well as the decedent, and advised the jury that it was for them to determine which, if either, had the right of way and whether or not either or both had used ordinary care. Another merely declared that a "driver" must be vigilant and keep his vehicle under such control as to enable him to avoid an accident. Its general terms were equally applicable to respondent and to decedent. Another stated: "Even where a driver enters an intersection first, it may be negligence as a matter of fact to proceed in the face of another car which is very close and coming fast." Even if the jury believed, as contended by appellants, that such instruction was directed at the conduct of the deceased, they were not thereby prejudiced. It correctly stated the law, and after reading the instructions as a whole, we do not be-

lieve that the evidence pointing to the alleged contributory negligence of the deceased was unduly emphasized.

██ Finally, we do not believe that appellants were denied a fair trial by reason of the fact that the foreman of the jury was a part-time insurance salesman. Upon the *voir dire* examination of Mr. Utter, appellants' counsel asked him:

"I understand you are retired now, Mr. Utter, from the answer you gave to his Honor yesterday?

"A. That's correct."

Upon cross-examination by respondent's counsel, Mr. Utter was asked if he had not been connected with the city schools but was now inactive. To which he replied: "So far as the schools is concerned, yes." He was asked no further questions in respect to his occupation.

In support of the motion for a new trial, affidavits were filed which set forth that Mr. Utter was an insurance salesman. Upon motion the affidavits were stricken so they are not before us. Assuming, however, that Mr. Utter is acting as an insurance salesman, his failure to volunteer that information does not establish that he was biased. There is no evidence that he wilfully concealed that fact about which he was not interrogated.

The judgment is affirmed.

Schottky, J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied April 4, 1956.

---

*Assigned by Chairman of Judicial Council.