[Civ. No. 21819. Second Dist., Div. Two. Mar. 11, 1957.]

LUELLA J. DeWIT, Appellant, v. McCLEERY GLAZIER et al., Respondents.

Randolph Karr, John H. Gordon and E. A. Hume for Appellant.

DeForrest Home for Respondents.

FOX, J.—After trial by jury in a malpractice action, a verdict was rendered in favor of the defendant doctors, upon which judgment was entered. A motion for new trial was denied. In her appeal from the judgment plaintiff seeks a review of the propriety of such order.

The limited record before us for purposes of this appeal consists of the clerk's transcript, a partial reporter's transcript comprising the *voir dire* examination of the prospective jurors, and a transcript of the proceedings at the hearing of the motion for new trial.

Although the record of the trial is not before us, the clerk's transcript discloses that defendants were charged with negligence in examining and diagnosing plaintiff's decedent, Mr. DeWit, and of performing an operation on Mr. DeWit which caused peritonitis to set in, which in turn is alleged to have been the cause of death.

Plaintiff's[1] contention is that she was denied a fair trial because of the misconduct of several jurors, as set out in affidavits filed in support of her motion for new trial. Defendants assert the question to be resolved is whether the trial court abused its discretion in denying plaintiff a new trial.

During the impanelment of the jury, plaintiff's counsel propounded questions to each of the jurors voting in favor of defendants, seeking to elicit their general views concerning the moral and legal right of a party to bring a malpractice action and inquiring about their feelings towards, and experiences with, and relationship to doctors. Inquiries were made as to the jurors' sympathy for doctors, whether they would apply any different standard to doctors charged with negligence simply because of their particular professional status; whether they understood that the action being tried was neither a prosecution nor a disciplinary proceeding; whether they could judge the case on the evidence adduced, divorced from personal feeling, as well as other questions of like import. These veniremen denied they had any prejudice along the lines asked which would preclude an objective consideration of the case. The tenor of their statements was that they felt a party had legal as well as moral right to bring a malpractice action and that they could try such an action with an open mind regardless of the fact that doctors were defendants.

Mrs. Klein, sitting as juror No. 2, was asked on *voir dire* whether she had a specialized knowledge of peritonitis "beyond what all of us laymen have" which she would substitute for such knowledge as she would apprehend from the evidence. She replied in the negative. Juror No. 3, Mrs. Hutson, disavowed on *voir dire* that there was anything in her medical history, or that of her husband, that would cause her to have any adverse feelings toward a plaintiff in a malpractice action.

In support of her motion for a new trial, plaintiff filed her own affidavit, an affidavit of Lionel T. Campbell, her attorney,

---

[1]The cause of action of coplaintiff Jacqueline DeWit was dismissed, leaving Luella DeWit as sole plaintiff.

and the affidavits of three jurors, Mrs. Armendariz, Mr. Koechling, and Mr. Rush. These juror-affiants averred that after the jury had retired and before any nine jurors had expressed themselves in favor of defendants, certain other jurors, in the hearing of the panel, made statements substantially as follows: It would be too bad to hold these doctors, it would ruin their reputations if found guilty; these doctors would not do anything wrong, and if they did they would have been expelled from the staff of the hospital; it wouldn't be right to ruin their professional careers for just one error, and these doctors could not do any wrong with all their education and experience. The Armendariz affidavit also states that during the deliberations, before nine jurors had indicated any decision, (1) juror Klein remarked in the presence of all the jurors that some 20 years before her husband developed peritonitis after an appendectomy and was still alive, that peritonitis is not fatal and that she could not see how the peritonitis in the case of plaintiff's decedent could have had any effect on his death; (2) that Donald Lewis, juror No. 10 and foreman of the jury, stated he gambled on horses and plaintiff was just gambling in court for $200,000; (3) that juror No. 6, Mrs. Oliver, stated plaintiff should not have brought her action because she knew she was going to lose it; (4) that Mrs. Hutson informed the jurors that her husband had been operated on by a doctor two years previously without her knowledge, that she had not been consulted about it, that "it didn't bother her and she didn't see why it should have bothered Mrs. DeWit." Mr. Koechling's affidavit also refers to the remark attributed to Mrs. Oliver, and Mr. Rush's affidavit asserts one juror (presumably Mr. Lewis) stated plaintiff was just gambling in court for $200,000 and that Mrs. Klein referred to someone in her family who had peritonitis some years ago.

Plaintiff and her attorney, Mr. Campbell, submitted affidavits to the effect that they were ignorant of the facts constituting the claimed misconduct until after the rendition of the verdict.[2] The Campbell affidavit asserts that he accepted the jurors solely on their answers made on their *voir dire* examinations and had he known of a preexisting bias and prejudice as disclosed by the matter contained in the affidavits of Armendariz, Rush and Koechling and not revealed on *voir dire,* he would have challenged the jurors in question.

[2] A like affidavit was filed by Jacqueline DeWit, originally a coplaintiff, as appears from footnote 1.

In a supplemental affidavit filed by Mrs. Armendariz, she asserts that while she was seated in the courtroom waiting to enter upon the deliberations in the jury room, juror No. 1, Mrs. Newcomb, handed her a box and stated: ''. . . don't open it here. I don't want anyone to see what I bought you. It's a little necklace to wear with your dress. . . .'' Later, according to Mrs. Armendariz, while the jury was deliberating, Mrs. Newcomb remarked to her in a low voice, in effect, that ''it would be nice to have all of us vote in favor of the doctors.''

Each of the other nine jurors filed counteraffidavits. In his, affiant Donald Lewis, the foreman of the jurors, categoricaly denied making the statement with reference to gambling imputed to him by Mrs. Armendariz and denied hearing any juror make any of the other statements alleged in the Armendariz, Rush and Koechling affidavits. He asserted that he viewed the case with an open mind, that he saw no evidence of prejudice or bias in favor of either plaintiff or defendants and that the deliberations were conducted conscientiously and fairly, in accordance with the evidence and instructions of the court.

Juror Klein stated in her affidavit that she made a reference to the fact that her former husband had peritonitis 20 years ago and was still alive. She described the circumstances as follows: Mrs. Armendariz, in the course of the deliberations, had remarked that someone she knew had died of peritonitis less than two weeks after an operation and that Mr. DeWit might have died of the same cause. Thereafter, while the jury was getting ready for lunch, Mrs. Klein spoke to Mrs. Armendariz alone and outside the hearing of other jurors. In answer to Mrs. Armendariz' example, Mrs. Klein referred to the fact that her ex-husband lived for 20 years after developing peritonitis following surgery, and that it was not necessarily fatal, and in view of the fact that Mr. DeWit had lived some two and a half months after the surgery, affiant couldn't see any connection between peritonitis and his death. Mrs. Klein stated that her statement was not the basis of her decision in the case, but was used simply as a contrary example to the instance cited by Mrs. Armendariz. Mrs. Klein stated she entered the case without any prejudice and kept an open mind until the case was submitted and deliberations began and that the jury made every effort to arrive at a fair decision.

Juror Oliver's affidavit states she does not recall making the statement that plaintiff should not have brought the action

because she knew she was going to lose; that if such statement was made by her, it was not the result of prejudice against plaintiff nor because of any belief that doctors could do no wrong, or of any consideration of injury to their reputations as the result of an adverse verdict. She averred that the evidence convinced her that the defendants were not negligent in relation to their treatment of Mr. DeWit, that she had no recollection of hearing the remarks attributed to the jurors in the affidavits supporting the motion, and in her opinion the jury considered the case impartially.

Juror Hutson likewise averred she heard no statements on the part of any jurors indicating that consideration should be given the doctors because an adverse result would ruin their professional careers. She stated she entered upon her duties with an unbiased mind and formed no opinion on the case until after deliberations began. With reference to the statement attributed to her that her husband had been operated on without her consent, which did not bother her, and she saw no reason why Mrs. DeWit should be bothered, Mrs. Hutson disclaimed the accuracy of this statement. She averred that in discussing the evidence, she had pointed out that the hospital record showed Mr. DeWit had given written consent to the operation and the evidence made it appear that plaintiff was complaining because she had not been asked for her consent. Then, as a matter of argument, Mrs. Hutson stated that she had not been asked to give consent when her husband was operated on and that she felt ''that it was Mr. DeWit's bladder and Mr. DeWit's surgery, and that he was the one who had the right to say whether he wanted it or not.''

Juror Newcomb's affidavit denies that she made the statements attributed to her indicating sympathy for the doctors and denies that she heard any of the other jurors so express themselves. She stated she tried the case with an unbiased mind. She avers that during the course of the deliberations she expressed the opinion that the evidence showed defendants had had a good medical education and wide experience. This statement was based wholly on the evidence and not on any preconceived idea that a verdict should be returned in favor of defendants because they were doctors and their medical careers should be protected. With reference to the incident of the gift, Mrs. Newcomb stated that she and Mrs. Armendariz frequently rode home together on the street car and became friendly; that during the course of the trial they exchanged books and reading matter; that Mrs. Armendariz

had presented her with over 20 paper-backed mystery books; that in appreciation, Mrs. Newcomb gave a necklace costing 79 cents and a bottle of cologne, both of which had been unused in her home for a considerable period of time; that it was not true that Mrs. Newcomb told Mrs. Armendariz not to open the gift in the presence of the other jurors or that the gift was made to influence her vote.

The remaining jurors, all men, filed affidavits which declared, in substance, that they saw or heard nothing in the jury room to indicate any jurors were motivated by bias or prejudice during the deliberations and that the case received a fair and open-minded consideration from the jury.

█ Plaintiff correctly states the well-established rule that upon motion for a new trial it is proper for the court to receive affidavits of jurors relating to occurrences during the deliberations of the jury tending to establish the bias of a juror existing at the time of his impanelment which was concealed during the *voir dire* examination directed to that point. (*Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674 [292 P.2d 257]; *Pollind* v. *Polich,* 78 Cal.App.2d 87, 92 [177 P.2d 63]; *Williams* v. *Bridges,* 140 Cal.App. 537 [35 P.2d 407].) Plaintiff is mistaken, however, in her suggestion that the affidavits before the court *conclusively* established bias and prejudice on the part of certain jurors voting against her and that she is entitled to a new trial. While plaintiff's affidavits, standing alone, concededly would be impressive, it cannot be ignored that nine jurors filed answering affidavits sharply challenging and contravening plaintiff's charges, putting some of the facts alleged in a different focus and stripping others of the sinister implications drawn by plaintiff. Certain jurors accused of making improper statements directly denied that many of the utterances attributed to them were actually spoken; others denied hearing such statements made; some denied the statements in the form or character alleged and described what was actually said or done in factual context; and all denied entertaining either a bias in favor of defendants or a hostile animus toward plaintiff at the time of their impanelment. A factual conflict existed as to whether certain statements were made at all, and a question existed as to whether other statements made, when seen in complete perspective, manifested a prejudice concealed on *voir dire.*

█ In considering an appeal from an order which is based on affidavits and which involves the determination of a ques-

tion of fact, an appellate court is bound by the same rule that controls where oral testimony is presented for review, namely: (1) if there is any conflict in the affidavits, those favoring the prevailing party are accepted as true; and (2) since all intendments are in favor of the action taken by the lower court, the affidavits in behalf of the successful party are deemed not only to establish the facts directly stated therein, but all facts reasonably to be inferred from those stated. (*Doak* v. *Bruson,* 152 Cal. 17 [91 P. 1001]; *West Coast Securities Co.* v. *Kilbourn,* 110 Cal.App. 293, 297 [294 P. 57].) ▮ In passing upon the motion for a new trial, it must be presumed that conflicts among the affidavits filed were resolved by the court in favor of the defendants, and its implied findings cannot be disturbed on appeal. (*MacPherson* v. *West Coast Transit Co.,* 94 Cal.App. 463, 468 [271 P. 509]; *Ham* v. *County of Los Angeles,* 46 Cal.App. 148, 154 [189 P. 462].) ▮ Plaintiff makes much of the fact that juror Klein answered in the negative when questioned about whether she had a specialized knowledge of peritonitis ''beyond what all of us laymen have'' and further answered on *voir dire* that she would not substitute any knowledge that she might have for what she might get from the witness stand. However, there is no showing that Mrs. Klein had any specialized knowledge of peritonitis, as distinct from what any layman might know of this malady. The fact that a member of her family once had peritonitis does not, without more, suggest that she had any specialized or technical knowledge beyond that of a lay person and that she suppressed such knowledge. Her affidavit reveals that her reference to a case of peritonitis within her knowledge was made in private to Mrs. Armendariz only in answer to a like reference postulated by the latter, and had no bearing on her approach to the issues presented by the evidence. ▮ Mrs. Hutson's affidavit with reference to the matter of a plaintiff's irritation at not being consulted about her husband's operation does not necessarily suggest any bias whatsoever antedating the trial and the court could reasonably find that her affidavit completely dispelled any question as to her bias in favor of defendants or against plaintiff. The trial court could also reasonably conclude that the gifts made by Mrs. Newcomb to Mrs. Armendariz were simply the outgrowth of their fraternization, that they were made in return for books given to her and without insidious implications. The trial court was not required to find this incident bespoke a bias concealed on *voir dire.* In short, it was the

function of the trial court to determine as a matter of fact where the truth lay on the conflicting evidence before it, and we can no more disturb the implied finding against plaintiff than if the question arose on a finding in the trial of the facts of the case.

The case of *Shipley* v. *Permanente Hospital,* 127 Cal.App. 2d 417 [274 P.2d 53, 48 A.L.R.2d 964], is of no assistance to plaintiff. In that case, the court *granted* a new trial after receiving affidavits which parallel those here presented, and this action was affirmed on appeal. Had the court below granted the motion for a new trial we would likewise be bound to presume that he accepted the veracity of the movant's affidavits; but as he denied a new trial, we must assume the facts most strongly against plaintiff. As the Shipley case emphasizes (p. 425), the granting of a motion for a new trial rests so completely within the discretion of the trial judge that a reviewing court will not interfere with his action unless a patent abuse of discretion appears. The underlying fallacy of plaintiff's reliance on an authority such as the Shipley case, where a new trial was granted, is aptly epitomized in *Lynn* v. *Knob Hill Imp. Co.,* 177 Cal. 56 [169 P. 1009], which involved an appeal from an order denying a motion to be relieved of default. The Supreme Court stated (p. 62) : ''The appellant makes the common mistake of citing to us cases where orders granting such motion have been sustained on appeal, and endeavoring to apply those precedents to the present case, where the relief is denied. The matter being discretionary and reviewable only for abuse, it may well be that this court would sustain an order denying such relief in one case and deny it in another, where the facts presented to the lower court were precisely the same in both, because this court could not say there was an abuse of discretion, in either event.'' In *People* v. *Webb,* 143 Cal.App. 2d 402 [300 P.2d 130], where the court reviewed an order denying a motion for new trial based on a juror's misconduct, the Shipley case was likewise distinguished as one in which the motion for new trial had been granted. The court then stated the rule here germane (pp. 419-420) : ''The trial court by its ruling denying the motion for a new trial necessarily impliedly found that Bradley did not misrepresent his state of mind on the *voir dire* examination. This finding cannot be reversed in the absence of a showing of a clear abuse of discretion. No such showing was here made [citations].''

Since the order in the instant case was made after the trial court considered conflicting affidavits and is supported by substantial evidence therein, the implied finding in defendants' favor will not be disturbed.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1957. Carter, J., was of the opinion that the petition should be granted.