[Civ. No. 22051.   Second Dist., Div. Two.   Apr. 18, 1957.]

BRUCE ANTHONY DUNFORD, a Minor, etc., et al., Appellants, v. GENERAL WATER HEATER CORPORATION (a Corporation), et al., Respondents.

Arthur Strock, Charles L. Nichols, Robert R. Mallicoat and Christopher Hall for Appellants.

Betts, Ely & Loomis for Respondents.

MOORE, P. J.—Bruce Dunford, a minor, through his mother Rose, as guardian *ad litem,* sued defendants for damages on account of injuries received when riding his bicycle on a public highway. He was struck by a vehicle of defendant corporation operated by defendant Camel, an employee. Also, Rose sued on her own behalf for loss of wages while nursing Bruce. The jury returned a verdict in favor of defendants and judgment was entered thereon. Plaintiffs filed their motion for a new trial on the statutory grounds: (1) irregularity in proceedings of the jury, by which plaintiffs were prevented from having a fair trial; (2) misconduct of the jury, and (3) error in law occurring at the trial and excepted to by plaintiffs. It was denied.

Plaintiffs now demand reversal on the sole ground that the trial court erred in denying their motion. They claim that the foreman of the jury, Miss Goodwin, gave untrue answers and concealed beliefs and prejudices when questioned on *voir dire* which, had the truth been disclosed on the examination, would have given rise to a successful challenge for cause or, failing that, would have justified counsel for plaintiffs in exercising a peremptory challenge. It is contended this was an irregularity in proceedings of the jury which prevented plaintiffs from having a fair trial, relying primarily upon *Shipley* v. *Permanente Hospital,* 127 Cal.App.2d 417 [274 P.2d 53, 48 A.L.R.2d 964]. That the cited case is not a happy decision for guidance will hereinafter appear from the record of the trial and of the proofs admitted on the hearing of the motion for a new trial. There was no evidence that any juror consciously concealed his true sentiments with respect to the nature of the action or with reference to the issues involved.

From the averments in the affidavits filed in support of and in opposition to the motion for new trial, the following alleged facts appear:

Mr. Strock, counsel for plaintiffs in charge of the trial, averred in his affidavit in support of the motion that while not one of the first 12 prospective jurors to be seated, Miss Goodwin was in the courtroom during the examination of the others prior to her being called; that she heard the judge inform the prospective jurors of the nature of the case and ask them "if there was anything about the nature of the case, or its parties, which would cause any juror to be prejudiced or biased"; that no prospective juror, including Miss Goodwin, made an affirmative answer. In reply to questions addressed to her, Miss Goodwin stated in substance that she was employed as private secretary to a vice president of a steamship company; there was nothing in her mind, thinking or emotional and mental conditioning that would prevent her from giving a fair verdict on the facts and according to the law and instructions given by the judge to each and every party to the action; that she had no mental or emotional attitudes or reservations that could prevent or influence her from arriving at a fair verdict; that her verdict would not and could not be influenced by the mere fact that plaintiffs were a boy and his mother or that one defendant was a truck driver and the other was a large corporation; and that if she were in the position of attorney for plaintiff she would be satisfied with a juror like herself.

The affidavit further averred that Miss Goodwin, and the other prospective jurors, were asked by affiant: "Whether the juror, by reason of philosophical or religious conviction, or otherwise, believed that a person who had suffered personal injuries because of the negligence of another should not seek redress in a court of law. That question was always answered in the negative; the answers always were that the jurors had nothing against an injured person who went to court for compensation for his injuries."

Mr. Strock's affidavit sets forth that after the close of the trial he came upon Miss Goodwin in the company of several other jurors, Mr. Shield, counsel for defendants, and Mr. Mallicoat, associate counsel for plaintiffs. "Then and there, I inquired of those jurors generally, but particularly to MISS GOODWIN, of their reasons for their verdict . . . MISS GOODWIN . . . stated . . . she was then employed by a large corporation and an executive thereof; she knew that large corporations did not like to be bothered by such lawsuits; that such corporations always made fair and reasonable offers of settlement in such cases; that she assumed that since a defendant was a corpo-

ration, a fair offer of settlement had been made by it to plaintiffs; that she could not understand why that offer had not been accepted. Mr. SHIELD then informed her that an insurance company was involved and that any offers of settlement would be made through the insurance company. MISS GOODWIN then stated that was the same thing in her mind. I then asked her if she believed that insurance companies and corporate defendants always make fair offers where personal injury claims are made against them. She answered that, 'Yes,' and added that she believed that the fairness of the offers made by insurance companies was due to their extensive experience in the field. I then and there inquired of MISS GOODWIN if at the time of the *voir dire* she held the same beliefs she had just expressed, and she said she did.'' Mr. Strock's affidavit then averred, in effect, that had he known of Miss Goodwin's beliefs, as expressed by her after the trial, at the time of her *voir dire* examination, he would have challenged her for cause or peremptorily have excused her.

The only affidavit in opposition to the motion was that of Miss Goodwin. She did not deny the conversation as averred in Mr. Strock's affidavit, but stated as follows:

''At the time of the voir dire examination of the jury and throughout the trial of the case and during the deliberations of the jury, I was not prejudiced for or against any party to the action.

''The subjects of large corporations, insurance companies, and the settlement of cases were never discussed during the deliberations of the jury by myself or by any other member of the jury. These matters never entered my mind until they were interjected by Mr. Strock into a conversation in the corridor outside the court, after the verdict was returned.

''The verdict of the jury in this case, as far as I was concerned, was reached by a mature consideration of the evidence and by following the instructions of law given by the court.''

Plaintiffs urge that had Miss Goodwin disclosed on *voir dire* the beliefs she later expressed after the verdict she would have been subject to challenge for cause and that her allegedly untrue answers on *voir dire* constituted an irregularity in the proceedings of the jury that prevented plaintiffs from having a fair trial. They rely upon *Shipley* v. *Permanente Hospital, supra,* 127 Cal.App.2d 417, in which case the court affirmed an order granting a new trial. The order there made was based primarily upon affidavits of jurors which disclosed that certain of their number were disqualified and gave untrue

answers on *voir dire* and thereby failed to reveal their disqualification. But in that case, the appellate court had before it a complete record of the *voir dire* examination. Also, the affidavits were by the jurors themselves instead of hearsay affidavits of counsel. There is nothing in the record of questions asked Miss Goodwin which should have called to her mind at that time her beliefs and sentiments which she later expressed to Mr. Strock after the rendition of the verdict and the discharge of the jury. In the Shipley case, the court held that jurors' failure to reveal disqualification constituted irregularity in the proceedings of the jury which prevented the complaining party from having a fair trial. ▮ Also, it held that the granting of a motion for a new trial rests so completely within the discretion of the trial court that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. This rule applies equally to an order denying a new trial. Such order will not be disturbed except upon an "affirmative showing of a gross, manifest or unmistakable abuse of discretion." (*Schultz* v. *Sussman*, 7 Cal.App.2d 100, 102 [45 P.2d 409].)

We do not determine whether Miss Goodwin's answers on *voir dire* were untrue and constituted an irregularity in the proceedings of the jury which prevented plaintiffs from having a fair trial, for the reason that plaintiffs have failed to supply us with the record of the *voir dire* proceedings by which only could that question be determined from the record.* ▮ It is incumbent upon an appellant to present a record which affirmatively shows error on its face, and where, as here, it is claimed a juror made false answers on *voir dire* examination, the question can be resolved only by an examination of the stenographic report of the *voir dire* proceedings. Appellants have furnished us with no such report but rely solely upon the affidavits of counsel summarizing such examination. This method of presenting the questions and answers on *voir dire* may be sufficient in the lower court where the trial judge has heard the proceedings, but not in an appellate court where the proceedings are in print and take life from the law. In the case at bar, the affidavits of counsel for plaintiffs are equivocal and do not present a complete and accurate picture

---

*Neither do we consider or pass upon the question of whether or not concealment or untrue answers by a venireman on *voir dire* examination are required to be *intentional or conscious* in order to justify a new trial on the ground of irregularity in the proceedings of the jury.

of the questions and answers. For example, Mr. Strock in his affidavit avers: ''A general question I often put to prospective jurors during that *voir dire* examination, heard by Miss Goodwin, and probably directly addressed to her, was in effect . . .'' By what character of clairvoyance can this court determine from such inconclusive averments whether Miss Goodwin was asked questions which, if truthfully answered, would have brought out bias and prejudice, if any existed? Furthermore, although Mr. Strock averred that Miss Goodwin stated to him that she held her ideas at the time of the *voir dire,* this she denied and stated in her affidavit that: ''These matters never entered my mind until they were interjected by Mr. Strock into a conversation in the corridor outside the court, after the verdict was returned.'' It is clear that without a stenographic report of the *voir dire* examination this court cannot determine whether questions were asked Miss Goodwin which should have called to her mind *at that time* her alleged bias and preconceived ideas about fair offers of settlement.

But in addition to the insufficiency of the record, the appeal must fail for lack of complete affidavits in the lower court in support of the motion for a new trial. It is essential, not only that there be affidavits showing that plaintiffs' counsel were ignorant of the facts constituting the claimed misconduct prior to the rendition of the verdict, but also that plaintiffs file an affidavit to the same effect, stating that they had no knowledge prior to the rendition of the verdict. (*Foreman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674-676 [292 P.2d 257] ; *Sherwin* v. *Southern Pac. Co.,* 168 Cal. 722, 726 [145 P. 92] ; *Newman* v. *Los Angeles Transit Lines,* 120 Cal.App.2d 685, 694 [262 P.2d 95] ; *Gray* v. *Robinson,* 33 Cal.App.2d 177, 183 [91 P.2d 194] ; *Lafferty* v. *Market Street Ry. Co.,* 7 Cal. App.2d 698, 702-703 [46 P.2d 996] ; *Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal.2d 480, 495 [55 P.2d 870].)

In *Forman* v. *Alexander's Markets, supra,* this court held (p. 675) : that plaintiffs had failed to show affirmatively in support of their motion for a new trial that both they and their counsel were ignorant of the facts constituting the asserted misconduct prior to the rendition of the verdict; that the absence of such a showing in support of the motion for a new trial is fatal; that plaintiffs having failed to make the affirmative showing that neither they nor their counsel had knowledge of the misconduct relied on prior to the rendition of the verdict, the order denying their motion for a new trial

was properly made. By reason of the absence of such requirements, to grant the motion would have been reversible error.

The same rule is applicable in the case at bar. Plaintiffs not only failed to supply a sufficient record by which to pass upon the merits of the case, but also they failed to provide the lower court with the necessary affidavits in support of their motion. ██ Since all intendments are in favor of the order of the trial court (*Schultz* v. *Sussman, supra,* 7 Cal. App.2d 100; *MacPherson* v. *West Coast Transit Co.,* 94 Cal. App. 463, 468 [271 P. 509]; *Lindemann* v. *San Joaquin Cotton Oil Co., supra; Estate of Mesner,* 77 Cal.App.2d 667, 677 [176 P.2d 70]), and because prejudice must be affirmatively shown by the party seeking a new trial (*Anderson* v. *Pacific Tank Lines,* 52 Cal.App.2d 244, 249 [126 P.2d 153]), the plaintiffs have failed to show an abuse of discretion on the part of the trial court in denying the motion.

Judgment affirmed.

Fox, J., concurred.

ASHBURN, J.—I concur in the judgment and generally in the opinion of Mr. Presiding Justice Moore, but certain further observations seem to be in order. By citing or factually distinguishing *Shipley* v. *Permanente Hospital,* 127 Cal.App. 2d 417 [274 P.2d 53, 48 A.L.R.2d 964], as we have done in *Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671 [292 P.2d 257] and *De Wit* v. *Glazier,* 149 Cal.App.2d 75, 82-83 [307 P.2d 1031], we tacitly lent approval to the doctrine that a constructive concealment by a juror on *voir dire* affords good ground for impeaching the verdict. The majority's present failure to pass specifically upon the question leaves the Shipley case and its doctrine unchallenged. I think the law should be clarified in this regard.

*Shipley* v. *Permanente Hospital, supra,* holds that "proof of intentional (conscious) concealment" by the venireman is not essential (p. 423), saying at 424: " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.' [Citations.] The deprivation of this inalienable part of the right to trial by jury without fault of the party prejudiced is independent from the intent of the juror to conceal and the means to show such deprivation should therefore not differ depending on whether the concealment was

intentional or not.'' This language was used in affirming an order granting a new trial. There was no application for a hearing in the Supreme Court. The ruling seems to be opposed to a uniform current of authority in this State and in my opinion it declares a doctrine fraught with danger to the jury system.

The rule that the minds and the deliberations of jurors can occasionally be looked into after rendition of their verdict constitutes a narrow exception to the general recognition of the sanctity of the jury room. It should be carefully limited to cases of wilful concealment upon the juror's *voir dire* examination. Otherwise, ingenious lawyers will be indefatigable in their efforts to examine the jurors after the event and to build constructive misconduct through synthetic concealment,—all based upon matters which were absent from the juror's mind at the time of his examination and not suggested to him by the questions put on *voir dire*. When we reflect upon the fact that judges so often assign faulty reasons for sound rulings and that those reasons are then rejected though the ruling stands, it becomes apparent that the reasoning of jurors should not be the subject of later investigation and that the reasons assigned by one of them in support of the verdict should not open the doors of the jury room. Most people, including judges, harbor numerous latent prejudices which may bear upon their decisions at any time but are not recognized when inquiry is made as to their ability to be impartial in a particular case. All of our opinions are formed in the matrix of our heritage and the background of our experience. If they are to be indiscriminately examined after the event and disqualification imputed retroactively it will be an unfortunate effort to eliminate the human element from the judicial processes. If jurors are to be thus disqualified after the verdict, it will be a sorry day for the integrity of that invaluable aid to administration of real justice.

The fundamental considerations which underlie the privilege surrounding jury deliberations should not be overlooked. They are stated by Mr. Justice Cardozo in *Clark* v. *United States*, 289 U.S. 1 [53 S.Ct. 465, 77 L.Ed. 993]. He says, in part: ''The judge who examines on the voir dire is engaged in the process of organizing the court. If the answers to the questions are wilfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham. What was sought to be attained

was the choice of an impartial arbiter. What happened was the intrusion of a partisan defender. If a kinsman of one of the litigants had gone into the jury room disguised as the complaisant juror, the effect would have been no different. The doom of mere sterility was on the trial from the beginning." (P. 11.) "For the origin of the privilege we are referred to ancient usage, and for its defense to public policy. Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world. The force of these considerations is not to be gainsaid." (P. 13.) "The privilege takes as its postulate a genuine relation, honestly created and honestly maintained. If that condition is not satisfied, if the relation is merely a sham and a pretense, the juror may not invoke a relation dishonestly assumed as a cover and cloak for the concealment of the truth. In saying this we do not mean that a mere charge of wrongdoing will avail without more to put the privilege to flight. There must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in." (P. 14.)

Prior to *Shipley* v. *Permanente Hospital, supra,* 127 Cal. App.2d 417, the California cases uniformly applied the rule in terms of wilful concealment.

*People* v. *Galloway,* 202 Cal. 81, 86, 91 [259 P. 332], was a case of active concealment and, as shown by the following passage, that was the basis of the ruling: "We think that *People* v. *Fair, supra* [43 Cal. 137], omits the recognition of a well-defined distinction which exists between a case where a juror was not interrogated upon the subject, or where he admitted his bias and expressed the belief that he could lay it aside, and a case where a juror concealed his prejudiced state of mind when examined on his *voir dire* and entered upon the discharge of his duty as such juror while in such mental condition. In the second instance, actual bias becomes, where concealed, positive misconduct and continues to be such throughout such juror's service on the case, and if such misconduct is not known to the accused until after the trial and verdict, we see no reason whatsoever why the court should not have power to grant to the accused a new trial, basing it upon said subdivision 3 of section 1181 of the Penal Code."

*Williams* v. *Bridges,* 140 Cal.App. 537 [35 P.2d 407], is another case of actual concealment. The court, at page 543, quoted portions of the language of *Clark* v. *United States,*

*supra,* 289 U.S. 1, and *People* v. *Galloway, supra,* which are above set forth.

In *Estate of Mesner,* 77 Cal.App.2d 667, 674, 676 [176 P.2d 70], Mr. Justice Shinn stated the rule as follows, at page 676: "Affidavits of jurors may be received as to occurrences during the trial and the deliberations of the jury which tend to prove the existence of prejudice in the mind of a juror, which would prevent his acting as an impartial juror, where the state of mind is charged to have been entertained and to have been intentionally concealed during his *voir dire* examination. (*Williams* v. *Bridges, supra; Gray* v. *Robinson,* 33 Cal.App.2d 177, 183 [91 P.2d 194].) This is a recognized exception to the general rule that affidavits of jurors may not be received to impeach the verdict except upon the ground that it was arrived at by resort to chance." In affirming an order granting a new trial the opinion emphasized the trial court's "implied finding that he [the juror] was guilty of intentional concealment." (P. 677.)

In *Pollind* v. *Polich,* 78 Cal.App.2d 87, 92 [177 P.2d 63], the rule of intentional concealment was again stated, but it was held that the challenged conduct of the juror did not measure up to that standard.

These cases are discussed in Shipley, *supra,* and differentiated upon the ground that they were not necessarily decided upon the theory that wilful concealment is of the essence. It appears, however, that such was the ground upon which those cases were decided and they should not be brushed aside upon the basis of what might have been the rationale of the particular rulings. The Shipley case does not mention *Mast* v. *Claxton,* 107 Cal.App. 59, 65 [290 P. 48], or *George* v. *City of Los Angeles,* 51 Cal.App.2d 311, 321 [124 P.2d 872].

In the Mast case, *supra,* a juror had failed to disclose the fact that one of the attorneys had previously represented him. At page 67 the court laid down this rule: "In order to justify the granting of a new trial on this ground it must be shown that some prejudice resulted to the appellant, or that there was a wilfully false and untruthful answer given by the juror, which would lead to the inference that the juror was animated by a dishonest motive in qualifying." At page 69 it was said: "Furthermore, we do not believe that either the juror Neilson or respondent's counsel were guilty of misconduct. It was undoubtedly a lapse of memory on the part of both, and the record is absolutely devoid of

anything that would tend to show any wilful misconduct." The judgment was affirmed.

In the George case, *supra*, it was claimed that the court in denying a new trial had erred in rejecting the claim of irregularity in the conduct of juror Gates. This court, speaking through Mr. Justice McComb, said at page 321: "We are of the opinion that from the foregoing facts appealing defendant was not in any way prejudiced by the juror's failure to understand the question and properly answer it. Therefore, since it is established that a motion for a new trial will not be granted upon the ground that a juror upon *voir dire* examination has incorrectly answered questions, in the absence of a showing that (1) prejudice has resulted to the appealing party, or (2) there were wilfully false and untruthful answers given by the juror which would lead to the inference that the juror was animated by a dishonest motive in qualifying, the trial judge properly denied the appealing defendant's motion for a new trial predicated upon the alleged misconduct of Juror Gates (*Mast* v. *Claxton*, 107 Cal.App. 59, 67 [290 P. 48].)" In response to an attack upon Juror Garland the court also said, on the same page: "There is, therefore, no showing that this juror wilfully concealed any fact from the court." The Supreme Court denied a hearing.

The references to prejudice in the Claxton and George opinions *supra*, seem to point to cases such as *Los Angeles County Flood Control Dist.* v. *Abbot*, 24 Cal.App.2d 728, 741 [76 P.2d 188]; *Scott* v. *McPheeters*, 52 Cal.App.2d 61, 66 [125 P.2d 868]; *La Gue* v. *Delgaard*, 138 Cal.App.2d 346, 348 [291 P.2d 960]; *Irvin* v. *Padelford*, 127 Cal.App.2d 135, 139-140 [273 P.2d 539], wherein it was held that the misconduct of the juror was not prejudicial because it did not affect the deliberations of the other jurors and the verdict was supported by sufficient votes without counting the disqualified juror. (See also *Buckley* v. *Chadwick*, 45 Cal.2d 183, 203 [288 P.2d 242].)

In *Ross* v. *Lightner*, 139 Cal.App.2d 756, 761 [294 P.2d 59], the court disposed of a claim of a juror's misconduct by saying: "There is no evidence that he wilfully concealed that fact about which he was not interrogated."

That the greater number of jurisdictions require wilful concealment in situations such as those now under discussion is attested by 66 Corpus Juris Secundum, § 22, at page 116. (See also Anno. in 38 A.L.R.2d at 645.) The following cases from other jurisdictions are likewise pertinent: *Harrison* v.

*St. Louis Public Service Co.*, (Mo.App.) 251 S.W.2d 348; *Lineker* v. *Missouri-Kansas-Texas R. Co.*, (Mo.App.) 142 S.W.2d 356; *Barb* v. *Farmers Insurance Exchange*, (Mo.) [281 S.W.2d 297, 302]; *Durham* v. *State*, 182 Tenn. 577 [188 S.W.2d 555, 557, 160 A.L.R. 746]; *Orenberg* v. *Thecker* (Ct.App.Dist.Col. 1944), 143 F.2d 375; *Childers* v. *Texas Employers' Ins. Assn.* (1954), 154 Tex. 88 [273 S.W.2d 587, 588].