[Civ. No. 18994.  First Dist., Div. Two.  May 24, 1960.]

JESSIE M. CONWAY, Appellant, v. CORWIN N. GURNEY, Respondent.

240

Marvin C. Hix for Appellant.

Hans A. Kruger for Respondent.

KAUFMAN, P. J.—Appellant, Jessie M. Conway, filed this action for personal injuries sustained as a guest in respondent's vehicle which was involved in an accident with an automobile driven by Mrs. Ruby McClelland. The respondent, Corwin N. Gurney, and Mrs. McClelland filed cross-complaints against each other. The jury returned a verdict in favor of the respondent and Mrs. McClelland on the appellant's complaint and in favor of Mrs. McClelland on her cross-complaint. This appeal is taken only from the judgment rendered in favor of defendant Gurney on the complaint. Appellant argues that the trial court erred in: (1) allowing

respondent's attorney to argue an erroneous principle of law to the jury; (2) failing to give certain instructions requested by the appellant; (3) giving conflicting instructions on the meaning of "wilful misconduct"; (4) giving erroneous instruction about the defense of assumption of risk; and (5) denying appellant's motion for a new trial.

The appeal is on an engrossed settled statement, pursuant to rule 7(b) of the Rules on Appeal. The accident occurred about 10 p.m. on January 22, 1958, at the intersection of Franklin and California Streets in San Francisco. At this intersection, Franklin Street is 56 feet wide and has three traffic lanes going north on the south side of California Street and two lanes going north and one lane going south on the north side of California Street. California Street is 61 feet wide from curb to curb and has lanes of traffic going east and west. The intersection is controlled by a three-way signal. The lights at the intersection are hooded so that a driver coming up Franklin Street cannot see the light on California Street until he is up to the intersection. The intersection is level but on the west, the downgrade between Gough and Franklin Streets is about 8-10 per cent.

The respondent was driving east on California Street in the lane next to the parking lane. Mrs. McClelland was driving north on Franklin Street in the far left lane, next to the parking lane.

There is no question that the appellant was a guest in the respondent's vehicle within the meaning of section 403 of the Vehicle Code. The appellant was sitting on the right side of the back seat of respondent's vehicle; Mrs. Engelcke was seated to her left, and John Begley occupied the front seat next to the respondent. The appellant testified that when they were about a car length from the intersection, she saw the amber light; the light did not turn red until after the impact which the appellant estimated took place in the vicinity of the manhole in the center of the street, more or less on the west side. She did not know whether respondent applied his brakes immediately but he continued to travel for about 35 feet and then came in contact with another car. She estimated that the respondent was driving at a speed of about 40-45 miles an hour, but did not protest to him or anyone else or ask to be let out of the car. The police officers ap-

peared about 10 minutes after the accident and measured the skidmarks which averaged about 70 feet. Immediately after the accident, she told Mr. Begley that the respondent had gone through a red light, but Mr. Begley told her not to say anything.

Under section 2055 of the Code of Civil Procedure, the respondent testified that he was driving about 25-30 miles an hour, not faster than 30 miles an hour at any time. When he was about 40-50 feet from the intersection, the traffic light was green. As he approached the Franklin Street crosswalk, he saw that the light was yellow and went through on it. The light did not turn red until after the impact. He did not go through the red light and did not see the McClelland vehicle before the accident. He began to skid when he was about 23-24 feet from the property line on the east side of Franklin Street, and skidded all the way down California Street until he hit a vehicle parked east of Franklin Street on the south side of California Street. He did not fully apply the brakes until after the impact. Just before he entered the intersection, he was talking to Mr. Begley who sat with him on the front seat; the car radio was on. He was familiar with the intersection and his brakes and tires were in good condition.

One of the police officers who arrived at the scene of the accident shortly afterward testified that neither he nor his fellow officer had measured the skidmarks from the point of impact down the hill and denied telling the plaintiff's attorney that he had measured the skidmarks and shown them to be 70 feet on the police report. He further stated that the right rear bumper and fender of the respondent's vehicle was struck by the McClelland automobile when the respondent's automobile was almost through the intersection with its front part in the easterly pedestrian lane. The police officer who arrived shortly after the accident, estimated that the respondent's car had traveled about 70 feet before coming to rest after the impact. The skidmarks were not measured as they were not long enough for a speeding citation.

John Begley, who was also a guest in the automobile, testified that he guessed the respondent was driving at a speed of about 25 miles an hour; that it could not have been more than 35. He testified that the last time he saw the traffic light, about 40 feet before the intersection, it was green; he did not see the light turn yellow and was not looking at the lights as they went through the intersection. He did not

feel that respondent put on the brakes until the impact. He further testified that the respondent was talking to him while driving and that the headlights were on. He denied the conversation with the appellant after the accident.

Mrs. McClelland testified that she was driving north on Franklin Street in the left lane, next to the parking lane. When she was midway between Pine and California Streets, she noticed the signal light on California turn yellow and accordingly shifted into a lower gear. When she was about 15 feet from the intersection, the signal turned green for her. Cars were parked in the curb lanes on both sides of Franklin Street and the driving lanes to her right were filled with automobiles. Tall buildings at the property line on the southwest corner of the intersection prevented her from seeing any distance west on California until she had reached the pedestrian crosswalk. As she was crossing the pedestrian lane across Franklin Street, she looked to the west up California Street and did not see the respondent's car. When she first saw the respondent's car, it was 7-8 feet in front of her. She put on her brakes and tried to avoid hitting it by swerving to the left, but her right fender and head lamp struck his right rear fender. She estimated that her speed was 10-15 miles per hour. She estimated that the respondent's speed had been between 40 and 50 miles and testified that his headlights were not on. It was stipulated that the testimony of J. D. McClelland would be the same as Ruby McClelland.

In rebuttal, the appellant testified that immediately after the accident, she told Mr. Begley that the respondent had run through a red light and Mr. Begley told her to keep quiet; that there were skidmarks starting back of the west curb line of Franklin Street and that these marks had been measured by the two police officers who testified earlier.

The first contention on appeal is that the trial court erred in allowing respondent's attorney to repeatedly argue on erroneous principle of law to the jury, namely, that the respondent had a right to continue through the intersection when the light was yellow. However, the record before us reveals that the jury was instructed as follows on the matter:

"You are further instructed that when a yellow traffic light facing the driver of an automobile is shown following a green traffic light the driver of a vehicle facing such yellow light or signal is thereby warned that the red or stop traffic light will be exhibited immediately thereafter and that he will be

required to stop when the red light or stop traffic signal is exhibited.''

The arguments complained of were not made a part of the record on appeal and cannot now be considered by this court. (*Ross* v. *Lightner*, 139 Cal.App.2d 756, 759 [294 P.2d 59]; *Roddy* v. *American Smelting etc. Co.*, 34 Cal. App.2d 457 [93 P.2d 841]; *Kabzenell* v. *Stevens*, 168 Cal. App.2d 370 [336 P.2d 250].) The settled statement contains only a broadly general reference to the argument complained of, and is a wholly inadequate basis for the contention now made.

Appellant next complains of the trial court's refusal of her proffered instruction based on section 670.05 of the Vehicle Code. This section requires that a passenger automobile shall upon application of the service brake, be capable of stopping in 25 feet from an initial speed of 20 miles per hour. Appellant's theory appears to be that if the respondent had been traveling at the speed to which he testified and his brakes had been in the condition required by the statute, there could not have been any skidmarks. She argues that the presence of the skidmarks established the fact that the respondent's brakes did not meet the requirements of the statute and her instruction should have been given.

We cannot agree. As indicated above, there was conflicting evidence about the length of the skidmarks and there was testimony that the respondent's brakes were in good condition. But there was no testimony that his brakes did not function properly, no showing of the distance in which respondent's brakes would stop his car, and no evidence that he was traveling at the speed contemplated by the code section. Thus the refusal of the instruction was proper. (*Pennington* v. *Southern Pac. Co.*, 146 Cal.App.2d 605 [304 P.2d 22]; *Nelson* v. *Douglas Pedlow, Inc.*, 130 Cal.App.2d 780 [279 P.2d 823]; *Moore* v. *Miller*, 51 Cal.App.2d 674 [125 P.2d 576].)

The next argument is that the trial court gave the jury conflicting instructions on the definition of ''wilful misconduct.'' The record indicates that after discussing the duties owed to a guest, the court gave the following instruction:

''First of all, what is the meaning of this term 'wilful misconduct' as it is used in the so-called 'guest law' of this state? Wilful misconduct as it is used in this guest law of the State of California means intentional wrongful conduct on the part of the driver which is done either with knowledge that serious

injury to the guest probably will result, or with a wanton and reckless disregard of the possible results of the driver's conduct. Now when I say that the conduct in question must have been intentional, *I mean only that the conduct complained of as such must have been intended. I don't mean that the result, that is, the injury to the guest, must have been intended by the driver.* The only element in the defense of wilful misconduct, in addition to the fact that it must have been intentionally done and wrongfully done, is that the driver must have had either knowledge that serious injury to the guest probably will result or with a wanton and reckless disregard of the possible result. *It is therefore possible that a driver could be guilty of wilful misconduct without having intended to injure the guest or anyone else.*"

Appellant argues that under the above instruction, the jury believed she could not recover unless the respondent intended to hurt her. The very language of the instruction which she emphasizes, refutes her argument:

"Now when I say that the conduct in question must have been intentional, I mean only that the conduct complained of as such must have been intended. I don't mean that the result, that is, the injury to the guest, must have been intended by the driver."

"It is therefore possible that a driver could be guilty of wilful misconduct without having intended to injure the guest or anyone else."

Appellant also places considerable reliance on a hearsay affidavit of her counsel that after the trial, nine of the jurors told him they so understood the instructions. ▪ It is axiomatic that hearsay statements of jurors contained in affidavits of counsel are not admissible for the purpose of contradicting, impeaching or defeating their verdict. (*McWilliams* v. *Los Angeles Transit Lines*, 100 Cal.App.2d 27 [222 P.2d 953]; *Murphy* v. *County of Lake*, 106 Cal.App.2d 61 [234 P.2d 712]; *Woods* v. *Pacific Greyhound Lines*, 91 Cal.App.2d 572 [205 P.2d 738].) Appellant here argues that the purpose of the affidavit is not to impeach the verdict but to show what the jury understood, and that since the affidavit was not controverted or objected to at the hearing on the motion for a new trial, it was admissible. However, we do not have before us the proceedings on the motion for a new trial, and thus there is no basis for appellant's claim that no such objection was made. The record before us indicates only that the jury asked whether it could give a verdict in favor of the appel-

lant on the negligence of the respondent, and was told that ordinary negligence would not support such a verdict. This instruction was correct. Appellant's argument here is really directed at the guest statute which does not permit recovery for negligence.

The final argument on appeal is that the trial court erroneously refused appellant's instruction on the assumption of risk as follows:

"If you find from the evidence that the plaintiff assumed the risk of riding in defendant's Gurney's automobile, such assumption of risk is not a defense to the wilful misconduct of said defendant, if you find from the evidence that he was guilty of wilful misconduct under the instructions heretofore given to you, unless you further find from the evidence that plaintiff's conduct was of such a kind and character that it was a part of, and the inducing cause of, defendant Gurney's wilful misconduct, if any you find."

The record before us, indicates that the jury was adequately and fully instructed on this matter as follows:

"Now of course it should be pointed out to you that if a guest in a car assents or consents to wilful misconduct on the part of the driver of the car in which he or she is riding in such manner as to show that she voluntarily assumed the risks of any wilful misconduct, if there was any, then, of course, the guest would be barred from recovering for her injuries, even if they were proximately caused by the wilful misconduct of the driver. The guest would be said under such circumstances to have assumed the risk of the wilful misconduct. However, I should point out to you that to constitute such an assent or such consent on the part of the guest in the car, there must be something more than mere silence on the part of the guest. There must be evidence showing that she knowingly concurred in the wilfulness of the driver's conduct and that she knowingly accepted the risks of any wilful misconduct if there was any. In other words, the guest, to be barred from recovery for wilful misconduct, must have knowledge at the time of the dangerous ride, of the facts that made it dangerous to her, and she must have had sufficient experience and understanding to appreciate the dangerous character of the conduct in question; and it means further that with such knowledge and such appreciation, she nevertheless lent her approval to any wilful misconduct, if there was any. . . ."

It has been held that the formula instruction requested by the appellant need not be given if the jury was sufficiently

advised of the circumstances under which the plaintiff can be considered to have assumed the risk. (*Mountain* v. *Wheatley*, 106 Cal.App.2d 333, 338-339 [234 P.2d 1031].) We think that was properly done and it was not error to refuse the requested instruction.

We conclude that no prejudicial error appears in the record before us.

Judgment and order denying motion for new trial are affirmed.

Draper, J., Stone, J. pro tem.,* concurred.

A petition for a rehearing was denied June 23, 1960, and appellant's petition for a hearing by the Supreme Court was denied July 20, 1960.

*Assigned by Chairman of Judicial Council.