[Civ. No. 26883.   Second Dist., Div. One.   July 3, 1963.]

N. D. RICHARDS, Plaintiff and Appellant, v. GEMCO et al., Defendants and Respondents.

William P. Nutter for Plaintiff and Appellant.

Dryden, Harrington, Horgan & Swartz, Vernon G. Foster, E. D. Yeomans, William E. Still and John J. Corrigan for Defendants and Respondents.

LILLIE, J.—Plaintiff, while employed by defendant Southern Pacific, sustained injuries on property owned by defendant General Motors and serviced by Southern Pacific. Damages were demanded from Southern Pacific under the provisions of the Federal Employers Liability Act, and from General Motors for negligent maintenance of its premises. The instant appeal is presented on a settled statement (Cal. Rules of Court, rule 7(b)*). Therefrom it appears that plaintiff, following an adverse jury verdict, unsuccessfully sought a new trial on several stated grounds. One such ground was the asserted misconduct of a juror during *voir dire* examination which, it is said, deprived plaintiff of a fair trial. The above contention is renewed on appeal[1]—in fact, it is the sole question for our determination.

The claim of misconduct on the part of the juror, one Dorman who was subsequently elected foreman, is predicated on Dorman's alleged close relationship with the law firm representing defendant General Motors. The details of this claim are set forth in the declaration of plaintiff's attorney,

---

*Formerly Rules on Appeal, rule 7(b).

[1] Plaintiff has appealed not only from the judgment but from the order denying a new trial. The latter order is nonappealable, its propriety being reviewable upon an appeal from the judgment. (*Litvinuk* v. *Litvinuk*, 27 Cal.2d 38, 42 [162 P.2d 8].)

Mr. Nutter, which was filed in support of the motion (for a new trial). According to the declarant, on a date apparently three days after entry of judgment, he received a telephone call from an unknown informant who gave him an "anonymous tip." Before doing so, however, the informant asked the declarant if he was aware of Dorman's occupation; the declarant replied that his knowledge was limited to answers elicited from the jurors on *voir dire* examination, including that of Mr. Dorman; that he had seen no reason to challenge Mr. Dorman for cause or to excuse him by the exercise of a peremptory challenge.[2]

---

[2]As enjoined so to do (*Dunford* v. *General Water Heater Corp.*, 150 Cal.App.2d 260, 265 [309 P.2d 958]), the proceedings on *voir dire* have been made part of the settled statement. After the court had conducted its own examination of the prospective jurors, which included an inquiry as to whether any of them had a relationship of attorney and client with the parties' counsel (previously identified) or "any other close business or personal relationship with any of the attorneys referred to," the following occurred:

"The Clerk: Robert W. Dorman!

"The Court: Mr. Dorman, did you hear the statement made by the Court yesterday at the start of this case?

"Mr. Dorman: Yes, sir, I did.

"The Court: Have you heard the questions I have asked generally of the prospective jurors in the box?

"Mr. Dorman: Yes, I have.

"The Court: If I were to ask you the same questions I have asked the others, would your answers be the same as the answers given generally by all of those still in the box?

"Mr. Dorman: Yes, they would.

"The Court: You feel then, do you, that you can act as a fair and impartial juror in this case?

"Mr. Dorman: Yes, I do.

"The Court: Counsel may examine.

"Mr. Nutter: Where do you live, please?

"Mr. Dorman: In Brentwood.

"Mr. Nutter: Your occupation, sir?

"Mr. Dorman: I am Director of Personnel for a small truck insurance company.

"Mr. Nutter: Do you have to do with the promulgation or the application of safety programs in any way?

"Mr. Dorman: No, I don't. We have a separate department for that.

"Mr. Nutter: But you are aware of those programs?

"Mr. Dorman: Yes.

"Mr. Nutter: Would you say that simply by virtue of the fact and that fact alone, without knowing the causes or the reasons during his period of service with the railroad company that Mr. Richards sustained five personal injuries, that that would put him in the classification of being accident prone?

"Mr. Dorman: Not necessarily, no.

"Mr. Nutter: Would that in any way affect your deliberations in connection with this matter?

"Mr. Dorman: No.

"Mr. Nutter: You were able to hear my questions to the other prospective jurors?

The informant then told the declarant that Mr. Dorman was employed by Transport Indemnity Company which, according to the informant, was one of the largest in the business and one of the chief clients of the law firm of Dryden, Harrington, Horgan & Swartz. In order to "verify" the above information, declarant telephoned a number listed for Dorman and talked with a woman from whom he elicited the information that Dorman was so employed; he made a search of Martindale-Hubbell—as a result, two photostated pages of that directory are attached to the declaration and list Transport Indemnity as one of the "representative" clients of the law firm in question; finally, from the business section of the Los Angeles Public Library declarant "learned that the assets of Transport Indemnity are in the millions of dollars."

The declaration concludes with the statement that declarant talked with a "former employee" of Transport Indemnity who told him that Dorman had been employed by that company for more than two years. In this connection, but on information and belief, declarant stated that Dorman was "well aware of the fact that one of the prime clients of the law firm of DRYDEN, HARRINGTON, HORGAN AND SWARTZ was the company by which he was employed and that a direct

---

"MR. DORMAN: Yes, I did.

"MR. NUTTER: Would your answers in substance be about the same?

"MR. DORMAN: Yes.

"MR. NUTTER: Any personal injuries to you or any close members of your family or friends?

"MR. DORMAN: No, nobody at all.

"MR. NUTTER: As to these doctrines of law that are applicable not to both companies but only to the individual companies, you are willing to do your best to distinguish as between the two companies and the doctrines that will be explained to you by the Court:

"MR. DORMAN: Yes.

"MR. NUTTER: Thank you very much. Passed for cause, your Honor.

"MR. CORRIGAN: Mr. Dorman, in your present occupation have you had occasion to have business dealings with the Southern Pacific Company or its representatives?

"MR. DORMAN: No, I haven't.

"MR. CORRIGAN: Passed for cause, your Honor.

"MR. FOXX: Have you had occasion to have any dealings with General Motors?

"MR. DORMAN: No, I haven't.

"MR. FOXX: Do you feel that you could listen to the evidence in this case, apply the law that his Honor will give you and come up with what you feel is a proper verdict?

"MR. DORMAN: I believe I can.

"MR. FOXX: Can you think of any reason why you shouldn't sit on this particular case?

"MR. DORMAN: None at all.

"MR. FOXX: Passed for cause your Honor."

and close relationship existed between his employing company and the said law firm.''

Declarations in opposition were filed by the defendants. Richard A. Foxx, associated with the Dryden law firm, stated in his declaration that he was the attorney representing General Motors at the trial and that his firm had been engaged through the insurance carrier (Royal-Globe) for that defendant. As far as he knew, there was no relationship between Royal-Globe and Transport Indemnity; it was additionally stated by Mr. Foxx that he did not personally know Mr. Dorman and first became aware of the identity of Dorman's employer when he received plaintiff's memorandum (points and authorities) in support of the motion for a new trial. The declaration concludes with the statement that only portions of Transport Indemnity's litigated matters are handled by the Dryden firm—other portions being handled either by Transport's house counsel or various law firms in the Los Angeles area.

The second declaration in opposition was executed by Mr. Dorman. Therein he stated that he answered the questions on *voir dire* honestly, accurately and to the best of his knowledge; that he had no personal acquaintance with the Dryden law firm or Mr. Foxx; that as director of personnel (for Transport) he did not participate in the functions of the company's claims department; except for the knowledge that Harold Q. Longenecker was an attorney for Transport, he knew nothing of the handling of his employer's legal matters. Finally, his use of the word ''small'' in his description of the size of his company was a comparative term based on its ''comparative size'' to other insurance companies.

■ In a proper case it has long been recognized that where a juror is biased or otherwise disqualified, and these facts are concealed by false answers on *voir dire,* affidavits may be used to set aside the verdict in which he participated. (*Kollert* v. *Cundiff,* 50 Cal.2d 768, 773 [329 P.2d 897].) The *Kollert* case points out that this is an additional, and decision-made, exception to the general rule forbidding the use of affidavits by jurors to impeach their verdict—the other exception being created by statute (Code Civ. Proc., § 657, subd. 2) where the verdict was reached by lot. Since the exception here sought to be applied is decisionmade, we are necessarily guided by certain rules formulated in those decisions over the years. For reasons hereinafter stated, it appears that plaintiff has not complied with such rules, and accordingly his motion for a new trial was properly denied.

■ First, it is axiomatic that hearsay statements of jurors contained in affidavits of counsel are not admissible for the purpose of defeating their verdict (*Conway* v. *Gurney,* 181 Cal.App.2d 239, 245 [5 Cal.Rptr. 248]); *a fortiori,* hearsay statements of counsel are likewise incompetent to achieve the same result. (*Markaway* v. *Keesling,* 211 Cal.App.2d 607, 611 [27 Cal.Rptr. 583].) As noted above, the asserted bias of the juror in the present case is presented solely by means of declaration by plaintiff's counsel; too, it is founded in great measure upon information supplied from unidentified sources. "If a member of the jury may not impeach the verdict by his personal affidavit or oral testimony, certainly he may not circumvent the rule by informing an attorney of the appellants by means of a telephone of his alleged misconduct as a juror and thus render his statement competent by the hearsay affidavit of some other affiant." (*Woods* v. *Pacific Greyhound Lines,* 91 Cal.App.2d 572, 577 [205 P.2d 738].) Accordingly even if the anonymous informant in the present case had been a member of the jury (and, of course, there has been no such showing), plaintiff's contention would still fall short of established requirements.

■ Second, where misconduct of the type here in question is relied on as a ground for a new trial, the affidavits of the moving party must show affirmatively that both *he* and his counsel were ignorant of the facts constituting the misconduct charged until the rendition of the verdict. (*Sherwin* v. *Southern Pac. Co.,* 168 Cal. 722 [145 P. 92]; *Crespo* v. *Cook,* 168 Cal.App.2d 360, 363 [336 P.2d 31].) Here no affidavit whatever was filed by plaintiff in the trial court. Too, as far as Mr. Nutter's declaration is concerned, there is no affirmative showing that he did not in fact have the requisite knowledge prior to the verdict's rendition. These deficiencies further support the order challenged.

■ Third, it must affirmatively appear that plaintiff was prejudiced by the misconduct complained of. (*La Gue* v. *Delgaard,* 138 Cal.App.2d 346, 348 [291 P.2d 960].) In this connection there is no indication whether the jury was polled following its verdict; if so, it is significant that such poll has not been made a part of the settled statement. Assuming that Mr. Dorman was prejudiced, as claimed, it was still plaintiff's burden to show affirmatively that prejudice resulted therefrom. Illustrative is *Irvin* v. *Padelford,* 127 Cal.App.2d 135 [273 P.2d 539]; "In the present case it appears that the jury was polled after the verdict in favor of plaintiff and the poll showed ten 'yes' and two 'no' votes.

It is therefore evident that since only nine 'yes' votes were necessary to secure a verdict for plaintiff, even though Mrs. McManus had voted the other way the verdict would still have been for plaintiff. Hence no prejudice resulted from any irregularity arising out of her *voir dire* examination." (P. 140.)

Finally, and particularly pertinent to the matters discussed in the preceding paragraph, the trial court was in a far better position than this court to determine whether plaintiff was prejudiced, and his claim in that regard was rejected. To the trial judge in the first instance is committed the task of deciding whether this decisionmade exception should be applied. Declarations in opposition to plaintiff's claims were filed; by its ruling the trial court impliedly found not only that plaintiff suffered no prejudice but that no dishonest motives existed on the part of the juror concerned. The record contains more than substantial support for such a finding.

The attempted appeal from the order denying a new trial is dismissed; the judgment is affirmed.

Fourt, J., concurred.

Wood, P. J., did not participate herein.