HYMAN v. EAMES et al.

(*Circuit Court, D. Colorado.* March 21, 1890.)

1. NEW TRIAL—DISQUALIFICATION OF JUROR.
   Where the question on motion for new trial is whether a juror declared himself in favor of one of the parties before the trial, and there is evidence to show that he did so, the affidavits of the other jurors showing that he made similar declarations in the jury-room are admissible.

2. SAME.
   Where, in a case based on conflicting and voluminous testimony, it appears that one of the jurors had prejudged the case, and concealed that fact from the defeated party, a new trial should be granted.

At Law. On motion for new trial.

*C. J. Hughes,* for plaintiff.

*Willard Teller* and *Wolcott & Vaile,* for defendants.

HALLETT, J. The principal point in support of the motion for new trial is that one of the jurors had prejudged the case, and the fact was concealed from plaintiff and his counsel, and was not ascertained by them until after the verdict was returned. Upon examination on *voir dire* the juror stated that he was not acquainted with the premises in dispute; that he knew nothing of the controversy, and had formed no opinion concerning it; and that he was entirely impartial between the parties. Plaintiff files the affidavit of Jesse Sinclair, in which the latter deposes that he met the juror Atkinson at Aspen, in the months of August and September, 1889, and had several conversations with him concerning the litigation between these parties. He describes the conversations in these words:

"That affiant in these conversations argued that the ore showing and mined in the Bonny Bell claim had broken over from the ridge above, and did not believe that it was a continuous vein or lode, within the meaning of the law, but simply a 'break over.' That the said Atkinson argued with affiant to the contrary, claiming that the Bonny Bell had a vein with an apex, and that the same was continuous, and that the owners of said Bonny Bell claim had a right to follow it. And the said Atkinson also stated that the Bonny Bell had won the first suit, would win the second, and would win every time. That his remarks with regard to the litigation was in favor of the Bonny Bell, and he expressed his belief in the correctness of their position."

In an affidavit filed by Atkinson, he denies that he had any such conversations with Sinclair, and says that he is not acquainted with him, and reaffirms his testimony given at the trial as to his impartiality. Upon this testimony alone, the deposition of Sinclair being contradicted by that of the juror, it would be difficult to say that the fact was established. But there is more in the record. The juror having stated that he was not acquainted with Sinclair, three witnesses testify that they saw him in conversation with Sinclair, and apparently in familiar intercourse with him, at Aspen, on several occasions during the summer of 1889. One of these witnesses, George R. Ford, was certainly mistaken in the person of Sinclair, but there seems to be no reason for discrediting the others. So, also, the juror was not wholly ingenuous in his testimony as to his residence, occupations, and associations. He told the counsel that he lived in Denver; that he worked for the Colorado Fuel Company; that he had mined at Red Cliff and Ashcroft, and in 1885 on the Aspen View claim at Aspen. This was true, but it was not the whole truth. He had in fact been much in Aspen during three months of the year 1889; and in September of that year, about two months before the trial, he had worked 11 days in a mine at that place. The questions propounded to him and to other jurors were obviously intended to elicit the knowledge and information of the juror concerning the mines of that locality, and in particular whether he had been subject to the local opinions and prejudices which prevail in a mining camp as to the merits of mining controversies. In answering that he lived in Denver, and was employed there, and that he had mined in other camps, but not at Aspen, since 1885, he conveyed the impression that he had no occupation at Aspen, and was not acquainted with affairs there in recent times. A candid desire to explain fully his attitude towards the parties would have led to some account of his visits to that locality during the year preceding the trial, and what, if anything, he learned of this controversy on such occasions.

The most important testimony, however, is given in the affidavits of four jurors to the effect that during the progress of the trial, and in the jury-room when the jury were in retirement, Atkinson declared that he had been on Aspen mountain, had seen the ground in controversy, and had talked with various parties, and was capable of judging of the matters in issue from his own personal knowledge and information. Another juror made a similar statement, and afterwards withdrew it, saying that he knew nothing of the matter. Five jurors testify that they heard no declarations of this kind, but it is hardly necessary to say that such negative testimony is not of much weight. Atkinson had little reason to discuss his knowledge of the facts with those who were uniting with him in advocating defendant's cause. Naturally, he would assert his superior opportunities for forming a correct judgment to those only who were opposed to him, and the affidavits referred to were made by such jurors.

It is contended that the affidavits assail the verdict, and for that reason they cannot be considered, under the familiar rule that jurors shall

not be allowed to impeach their verdict. But we are now considering the competency of Atkinson to sit as a juror, and upon that question it is believed that the testimony of his associates may be received. The result of the cases cited in sections 2626, 2627, 2 Thomp. Trials, is that the testimony of jurors may be received on that question, although in some jurisdictions they are not heard on any point which may tend to overthrow their verdict. Whether a juror can disqualify himself by anything he may say after the trial has begun is extremely doubtful, and therefore it may be said that declarations made during the progress of the trial, or in the jury-room, are not in themselves sufficient proof of incompetency. But where, as in this case, the question is whether a juror, previous to the trial, committed himself to one of the parties, and there is evidence to show that he so declared himself, the testimony of his associates that he made similar declarations during the trial, and in the jury-room, becomes very persuasive, and no sound reason is perceived for rejecting it. The sworn statements of four jurors as to declarations made by Atkinson to them would seem to give the necessary preponderance to the testimony of Sinclair, and to establish the fact of Atkinson's incompetency, in that he had prejudged the case. That this was concealed from plaintiff and his counsel is manifest from his examination on *voir dire*, and they have filed affidavits saying that they had no knowledge or information concerning his predilections until after the trial was over. The rule that a new trial will not be granted for such cause except in case of an unjust verdict, which is said to be quite general, (1 Thomp. Trials, § 116,) in requiring the court to decide whether the verdict is just, seems to leave the whole matter very much at sea. If the verdict is unjust, there ought to be a new trial, without regard to the qualifications of jurors; and the real question would seem to be whether any verdict that may be given by one who is not competent to sit, is not, in the eye of the law, unjust. But if, as would appear to be reasonable, the meaning of the rule is that in a clear case the verdict shall not be disturbed for such cause, it may be proper to remark that this case is not of that character.

The testimony at the trial was so highly conflicting and voluminous that it would be difficult for jurymen to give it proper attention, and the case is of a character to develop in the average mind some general notions of equity and fair dealing which would outweigh all considerations of law and evidence. Upon the general proposition that a new trial may be allowed on the ground of Atkinson's incompetency, authorities are numerous, and those here cited appear to be fully in point. *Vennum* v. *Harwood*, 1 Gilman, 659; *Essex* v. *McPherson*, 64 Ill. 349; *Pearcy* v. *Insurance Co.*, 111 Ind. 59, 12 N. E. Rep. 98. The plaintiff will be allowed a new trial on payment of the costs of the last trial, excepting only the costs of defendants' witnesses. The costs last mentioned will abide the result of the suit.