[Civ. No. 15955. First Dist., Div. Two. Sept. 15, 1954.]

RAYMOND A. SHIPLEY et al., Respondents, v. THE PER-
MANENTE HOSPITAL (a Corporation) et al., Ap-
pellants.

Ricksen, Freeman & Johnson and Ralph Nathanson for Appellants.

Ernest I. Spiegl and Schroth & Salerno for Respondents.

NOURSE, P. J.—This is an appeal by defendants from an order granting a new trial after a verdict in their favor. The action is for damages for malpractice. Plaintiffs are Hazel Shipley, the patient, and her husband; as defendants there remain after certain changes pending suit the Permanente Hospital, a corporation; Permanente Health Plan, a nonprofit

trust and Dr. J. G. Hallett. It was the position of plaintiffs that Mrs. Shipley submitted herself to Permanente Health Plan and Permanente Hospital for treatment of a back injury caused by a fall from a chair, that defendant Hallett and his assistants, as agents of the other defendants, negligently (without taking X-rays of the back) made the diagnosis that Mrs. Shipley's symptoms required hysterectomy; that they performed said operation without necessity and in a negligent manner, that, when during some months after the operation Mrs. Shipley's painful symptoms did not disappear, defendants found by means of X-ray diagnosis a facet fracture of part of a lumbar vertebra and that when thereafter they began to render treatment for said fracture it was too late to give adequate relief.

The motion for a new trial was based on the following grounds: (1) Irregularity in the proceedings of the jury by which plaintiffs were prevented from having a fair trial; (2) misconduct of the jury; (3) irregularity in the proceedings of the attorney for defendants by which plaintiffs were prevented from having a fair trial; (4) accident and surprise which ordinary prudence could not have guarded against; (5) error in law, occurring at the trial and objected to by the plaintiffs. The order appealed from granted a new trial on all issues without stating on which grounds it was based. However, the hearing of the motion for a new trial was mainly concerned with alleged prejudice (sympathy) of some jurors for doctors charged with malpractice contrary to said jurors' answers on *voir dire* and the trial judge indicated that he considered this the main point. Therefore this matter will be considered first. (All other grounds specified in the motion which find support in the evidence and the law are equally available to sustain the order.)

The motion for a new trial was supported by affidavits of three dissenting jurors and of one juror who after having been in favor of a verdict for plaintiffs changed her vote. They declare that at the first ballot, taken after several hours of debate, the jury stood seven to five in favor of defendants. The majority of the seven jurors favoring defendants made statements substantially as follows:

"A verdict against Dr. Hallett would blast his professional career."

"In general, a malpractice verdict against a doctor ruins him professionally."

"Regardless of what has happened to Mrs. Shipley nothing that we can do will restore her; but any verdict which we bring against the doctor will ruin him!"

"If we were to hold doctors liable for their mistakes, they would never operate on anyone."

"Doctors spend years in studying for their profession; they should know what they are doing, and we have no right to pass judgment on them."

"If one can't put his faith in doctors he has no business going to them in the first place."

When the foreman of the jury, one of the dissenters, pointed out that the above position was based upon sympathy and prejudice in favor of doctors contrary to the oath and duty of a juror the language of the replies was to the effect that such jurors could not bring in a malpractice verdict against an individual doctor on the ground that the detriment to the individual doctor and the medical profession outweighed the justice of the individual case.

As several of the majority jurors were willing to vote for a verdict in favor of plaintiffs if the defendant doctor could be excepted from liability, the foreman asked the court for instruction as to the possibility of such a verdict. When the court advised the jury that a plaintiffs' verdict must be against all defendants, the seven jurors favoring the doctor maintained their vote and the majority of them more than once repeated the statements made before, including their refusal to render a malpractice verdict against any practicing physician or surgeon. Although affiants are unable to state the exact words of the statements made by such jurors, nor the names of the individual jurors who made the respective statements, the thoughts stated were repeated many times by the majority of the jurors; from which fact the affiants conclude that said jurors, whether consciously or unconsciously, possessed, from the outset of the proceedings, a state of mind inconsistent with their answers on *voir dire* that they had no prejudice one way or the other, would not be activated by sympathy and would determine the issues solely upon the evidence and the law as given to them by the court.

Moreover an affidavit of plaintiffs' attorney stated among other things in substance that each juror had been carefully questioned on *voir dire* as to his state of mind with respect to the above points, that if the juror's answer to said questions had been contrary to those given he would have assigned said answers as ground for excusing the juror for cause and if

that was not accepted have challenged him peremptorily; that because of the answers given neither he himself, nor associate counsel, nor plaintiffs had any means of discovering the true mind of the above several jurors until after discharge of the jury, when he was so informed by the foreman.

Defendants moved to strike out the above affidavits of jurors as inadmissible under the rule that jurors are not allowed to impeach the verdict, and themselves offered affidavits in opposition of three jurors favoring the verdict, denying in effect that any majority juror used arguments other than based on the evidence and the instructions, acted unfairly or partially or were influenced by sympathy or prejudice or did not keep free and open minds. Plaintiffs moved to strike these affidavits and defended those in support of their motion on the ground of an alleged exception in California to the rule excluding affidavits of jurors to impeach the verdict. This exception allegedly permits the use of jurors' affidavits to show occurrences during the deliberations of the jury or the trial tending to disclose bias of a juror or another circumstance existing at the time of the *voir dire* examination which if truthfully declared in answer to questions actually put on *voir dire* would have been a basis for challenge for cause, but which was concealed by untruthful answers and could not have been detected by the party prejudiced before the end of the trial. Both motions to strike were denied.

Appellants urge that the jurors' affidavits in support of the motion for a new trial were inadmissible and that then there was no evidence at all of bias concealed on *voir dire*. They recognize the existence in California of an exception of the kind stated but contend that such exception is limited to cases of intentional concealment on *voir dire*. They moreover urge that there was no evidence whatever that the bias shown during the jury deliberations, if any, existed at the time of the *voir dire* examination.

The cases are not conclusive with respect to the alleged requirement of intentional concealment. The first time that the exception was treated expressly in California was by this court in *Williams* v. *Bridges,* 140 Cal.App. 537 [35 P.2d 407]. In that case a motion for a new trial was granted because a juror, who had declared on *voir dire* that she knew absolutely nothing about the facts of the case, was shown by a juror's affidavit to have declared in the jury room that she knew about the accident, had passed the place where it occurred and was

not surprised that the fence fell because she had noticed that it was poorly constructed. The court distinguished the prohibition of affidavits of jurors to impeach the verdict with respect to words or acts inherent in the verdict and which had their origin after the impanelment and before the discharge of the jury from the facts of the case which had their origin before the impanelment and continued until the discharge of the jury and involved a false answer made on the juror's *voir dire* examination not involved in the cases which upheld the exception (p. 540). This distinction does not necessarily involve an intentionally false answer. But two earlier cases on which the court relied and from which it quoted seem to aim at intentional concealment. *People* v. *Galloway*, 202 Cal. 81 [259 P. 332], which does not expressly state an exception, contains the statement that actual bias of a juror, where concealed, becomes positive misconduct (p. 543) and *Clark* v. *United States*, 289 U.S. 1, 14 [53 S.Ct. 465, 77 L.Ed. 993], states that the privilege of a juror not to have his action in the jury room exposed does not apply where his relation as juror is fraudulently begun and fraudulently continued. (P. 542.) However, when this court in *Tierney* v. *Charles Nelson Co.*, 19 Cal.App.2d 34, 37 [64 P.2d 1150], stated the extent of the exception it again did not require intentional concealment. It is said that such cases involve ''alleged untruthful answers on the voir dire examination'' where ''truthful answers to the questions propounded'' would have had a ''tendency to disclose actual or implied bias on the part of the juror as the basis for a challenge for cause.'' *Gray* v. *Robinson*, 33 Cal.App.2d 177 [91 P.2d 194], states the rule of *Williams* v. *Bridges, supra,* on page 183 as upholding the admissibility of affidavits of jurors ''in reference to the statement of the jurors on examination under voir dire relating to facts which had their origin before empanelment and continued until discharge of the jury.'' Again there is no mention of intentional concealment, but in its own case the court held it unnecessary to resort to jurors' affidavits.

The first statement of the rule restricted to cases where prejudice of a juror is charged ''to have been intentionally concealed during his *voir dire* examination'' is found in *Estate of Mesner*, 77 Cal.App.2d 667, 676 [176 P.2d 70], citing as authority only the Williams and Gray cases. The granting of a new trial was upheld on the ground of ''misconduct of a member of the jury, which constituted a prejudicial irregularity in the trial.'' (P. 674.) On *voir dire* the juror had

stated his impartiality and that he did not have a personal or more than courtroom acquaintance with any counsel in the case. An affidavit of another juror declared that in the jury room the accused juror had stated that a few months earlier he had heard from a personal friend at the Hall of Records that a named counsel involved in the case "was the attorney for the underworld and big gamblers. . . . You know a man like that can't be believed or trusted." Although the requirement of intentional concealment is stated in theory there does not seem to be more proof of intentional concealment in *Estate of Mesner* than in our case. No personal acquaintance with the attorney was shown and the juror need not have been conscious of his prejudice.

*Pollind* v. *Polich,* 78 Cal.App.2d 87, 92 [177 P.2d 63], affirming the denial of a new trial, states the exception as follows, relying on *Estate of Mesner* as only authority: "Exception is made to this rule where it is shown or attempted to be shown by statements made by a juror during the course of the trial and by his *voir dire* examination that at the time of the examination he intentionally concealed facts which would tend to show that he entertained a state of mind which would render him disqualified to serve as a fair and impartial juror." The requirement of intentional concealment was not decisive of the decision, which was based on lack of interrogation on *voir dire* as to the points to which the affidavits of jurors related and the possibility that the prejudice was formed during the trial.

If the exception is correct in principle there seems no good ground to require proof of intentional (conscious) conceal- ██ The reason for the general rule prohibiting jurors from impeaching the verdict is that "public policy requires that the sanctity and stability of judicial determinations shall not be subject to the evidence of jurors who may be tampered with. . . ." (*Saltzman* v. *Sunset Tel. & Tel. Co.,* 125 Cal. 501, 504 [58 P. 169].) The valid ground for the making of exceptions is that another interest is considered to outweigh the danger of tampering and instability. The code itself mentions as exception resort to determination by chance. (§ 657, subd. 2, Code Civ. Proc.) The fact that a juror is disqualified by circumstances which if known would have given rise to a challenge for cause but which, notwithstanding sufficient questioning on *voir dire* intended to reveal the grounds for challenge, were not disclosed by the juror's untrue answers may also be considered to outweigh the ground

for the rule. ▌▌ ''The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.'' (*People* v. *Galloway*, 202 Cal. 81, 92 [259 P. 332] ; *Lombardi* v. *California St. Ry. Co.*, 124 Cal. 311, 317 [57 P. 66].) ▌▌ The deprivation of this inalienable part of the right to trial by jury without fault of the party prejudiced is independent from the intent of the juror to conceal and the means to show such deprivation should therefore not differ depending on whether the concealment was intentional or not. Also in some other jurisdictions a distinction is made between affidavits of jurors impeaching their verdict, which are inadmissible and affidavits of jurors showing that a juror was ineligible from the beginning because of prejudice which are not inadmissible (*Hyman* v. *Eames*, 41 F. 676, 678; *People* v. *Leonti*, 262 N.Y. 256 [186 N.E. 693]), although this is not supported by the weight of authority elsewhere. A consistent application of this rule as accepted in the Williams case, *supra*, must admit the affidavits in this case also.

▌ Against the whole exception it could be said that where the statute states only one situation in which affidavits of jurors may be used the court cannot add others. However this provision of the statute is contained only in subdivision 2 of section 657, Code of Civil Procedure, relating to misconduct of jury, not in subdivision 1, relating, among other things, to irregularity in the proceedings of the jury by which a party was prevented from having a fair trial so that the reasoning *a contrario* need not necessarily apply also to such irregularity. (See note 23 Cal.L.Rev. 359, 360-361.) ▌▌ The impaneling of a juror who is subject to challenge for cause in consequence of untrue answers which concealed the ground of challenge is certainly such an irregularity. (See *Estate of Mesner*, 77 Cal.App.2d 667, 674 [176 P.2d 70]; *Sherwin* v. *Southern Pac. Co.*, 168 Cal. 722, 726 [145 P. 92].) We therefore do not think that the rule of *Williams* v. *Bridges* is in conflict with section 657, *supra*.

▌ Appellants' contention that there is no evidence that the bias already existed at the time of the *voir dire* examination seems without merit. It is true that the statement in the affidavits of jurors in support of the motion for a new trial, that the prejudiced frame of mind existed from the outset of the proceedings is a conclusion of these jurors without evidentiary value, but the trial judge in his wide discretion could infer the earlier existence of the prejudice from the

utterances in the jury room. ██ "It is well settled that the granting of a motion for a new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. (Citations.) ██ Upon an appeal from an order granting a new trial, all presumptions favor the order as against the verdict (citations)." (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338].) No circumstances were shown or urged which made it probable that the prejudice had developed during the trial. The prejudice did not relate to a specific person involved in said trial but was general in favor of physicians or surgeons charged with malpractice. The probability was then that the prejudice had existed longer than the few days of the trial. ██ Probability is a sufficient basis for an inference in a civil case. (*Sanders* v. *MacFarlane's Candies*, 119 Cal.App.2d 497, 500 [259 P.2d 1010].) At any rate it cannot be said that the drawing of such inference constituted an unmistakable abuse of discretion. *Pollind* v. *Polich, supra*, 78 Cal.App.2d 87, 92, and *People* v. *McCaffrey*, 118 Cal.App.2d 611, 620 [258 P.2d 557], which held under somewhat similar facts that there was no evidence of the bias at the time of the *voir dire* examination, were both appeals from denial of a motion for a new trial so that all inferences and presumptions were there against proof of a ground for new trial. They are no authority here.

██ Appellants point out the general nature of the affidavits which do not state the names of the biased jurors. This is a question of weight solely for the trial judge.

Order affirmed.

Dooling, J., and Kaufman, J., concurred.