[Civ. No. 28476.   Second Dist., Div. Four.   Jan. 11, 1966.]

MARY MacCOLL, Plaintiff and Appellant, v. LOS ANGELES METROPOLITAN TRANSIT AUTHORITY et al., Defendants and Respondents.

Norman Warren Alschuler and Robert B. Smith for Plaintiff and Appellant.

Harry M. Hunt and David S. Smith for Defendants and Respondents.

KINGSLEY, J.—This is an appeal by the plaintiff, Mary MacColl, from a judgment of the superior court in a personal injury action in favor of defendants, entered June 27, 1963, and from an order of the superior court, entered on August 30, 1963, denying plaintiff's moton for a new trial.[1]

For the purposes of the present appeal, the facts leading up to the litigation may be summarized as follows:

On September 5, 1962, plaintiff, Mary MacColl, was a passenger on a streetcar owned and operated by defendant Los Angeles Metropolitan Transit Authority. The plaintiff is an elderly lady who previously had difficulty walking when she got on the streetcar. She also alighted with difficulty. She placed, or accidentally caught, her arm or fingers or hand in the rear door of the streetcar. The motorman did not see the plaintiff alight or hear a warning buzzer. He started the car with plaintiff's hand, or fingers, or arm, in the door, and she ran alongside or was dragged along by the streetcar. As a result, the plaintiff sustained severe and permanent injuries.

Plaintiff brought suit against the Transit Authority and the driver of the vehicle, claiming that the defendants were negligent in their duty to her as a passenger. The case was tried before a jury; verdict was returned for the defendants by a nine-to-three vote. The verdict was duly entered, judgment was entered thereon; a motion for new trial was made and denied; plaintiff has appealed.

The plaintiff's contentions on appeal relate to several alleged acts of misconduct of the jury, and to an alleged error of the trial court in refusing to admit into evidence certain safety rules of the defendant Transit Authority. Since these are the only matters urged on us as grounds for reversal, we need not expand on the facts beyond the preliminary statement above set out. The evidence was such that a verdict for either party was possible.

---

[1]No appeal lies from an order denying a motion for new trial (3 Witkin, Cal. Procedure (1954) Appeal, § 28, p. 2174); the only importance of the order in this case was to extend the time within which the notice of appeal could validly be filed. Cal. Rules of Court, rule 3.)

# I
## CONDUCT OF THE JURY

The claims of error relating to alleged misconduct of the jury are based on the affidavits of some of the jurors.

■ It is the general rule that a jury verdict may not be impeached by such affidavits except in the situation (chance verdict) set forth in subdivision 2 of section 657 of the Code of Civil Procedure. To this exception, the courts have added another: the concealment by a juror on *voir dire* of facts which would tend to show that he entertained a state of mind which would render him disqualified to serve as a fair and impartial juror. (*Pollind* v. *Polich* (1947) 78 Cal.App.2d 87, 92 [177 P.2d 63].)

■ It is contended that the jury disregarded the trial court's instructions to apply against defendants a standard of utmost care and applied, instead, a standard of reasonable care. However, it is well settled that jurors may not impeach their verdict on that ground. (*Whiting* v. *Squeglia* (1924) 70 Cal.App. 108 [232 P. 986]—claim that the jurors misunderstood the instructions; *Roselle* v. *Beach* (1942) 51 Cal.App. 2d 579 [125 P.2d 77]—claim that the jury had been misled by the arguments of one of their number; *Ambrose* v. *Allen* (1931) 113 Cal.App. 107 [298 P. 169]—claim that the jury had misunderstood the issues.) The affidavits offered on this point fall short of alleging facts that would show a concealed intent, at the time of *voir dire,* to disregard instructions not yet given.

■ It is also contended that sundry remarks, of an improper nature, had been made during the jury's deliberations. This, also, is not a permissible ground for impeachment of a verdict. "To allow verdicts to be defeated because of improper remarks of a juror in the course of their deliberations upon the issues under consideration would be calculated to discourage free discussion which is deemed essential to the development of a full knowledge and a ripe judgment of the jury." (*Maffeo* v. *Holmes* (1941) 47 Cal.App.2d 292, 295 [117 P.2d 948].)

■ As to three jurors, contentions are made which do raise the issue of a concealed bias:

(a) On *voir dire,* the court asked the jury if any member was presently a party to a law suit. The jury said "No." One juror (Mr. Sodaitis) informed the court of his involvement in litigation resulting from an automobile accident. He

told the court the litigation was completed. After the trial, it was discovered that the juror's lawsuit had not, in fact, been completed and there was still pending against this witness and his employer a suit for personal injury.

There was no showing that this was the kind of concealment of a disqualification to which the rule invoked by plaintiff applies. The witness claimed that, during this trial, he did not know of the additional claim against him for personal injury, and that he in good faith believed the prior litigation was completed; further, he set forth several plausible reasons for his erroneous but honest belief that the prior litigation was no longer pending.[2] In *George* v. *City of Los Angeles* (1942) 51 Cal.App.2d 311 [124 P.2d 872], a motion for new trial was denied where a juror gave an unintentional incorrect answer to a question asking whether she or her husband had been in an accident before.

(b) Another alleged area of misconduct refers to the statements attributed to one juror, Mrs. McDonald, that old people should not ride the street cars. However, no questions were asked on *voir dire* as to any possible prejudice against elderly passengers. The situation is thus comparable to that in *Pollind* v. *Polich, supra,* (1947) 78 Cal.App.2d 87, where an affidavit that the foreman of the jury had said that kid drivers "shouldn't be allowed on the streets" was held to be insufficient to show a concealment of disqualification where the jurors had not been asked as to any prejudice against young drivers. The comment of the court in the *Pollind* case (at p. 92) is applicable here: "If it had been feared by plaintiff that the jurors might be prejudiced against the driving of automobiles by young boys, they should have been questioned on that point." To the same effect is the holding in *Metcalf* v. *Romano* (1927) 83 Cal.App. 508 [257 P. 114], that language used by jurors, in the course of their deliberations, indicative of a prejudice against careless drivers, was not a fact which could be relied on to impeach a verdict, since it did not fall within the rule as to concealment of a disqualifying fact.

(c) In several of the affidavits it was claimed that Juror Gardina had said, during the jury's deliberations, that if the

---

[2]Failure of a juror on *voir dire* to disclose that his employer was a client of the law firm representing defendant was not a ground for invalidating verdict or for a new trial, in the absence of prejudice or dishonest motives of juror. (*Richards* v. *Gemco* (1963) 217 Cal.App.2d 858 [32 Cal.Rptr. 65].)

jury found against the Transit Authority the motorman would be penalized, and that he would not vote against the authority for that reason.

On *voir dire,* the juror was not asked specifically if he was biased in favor of the motorman or the Transit Authority, although he, in common with other jurors, was asked the general question whether he could be "fair and square." Plaintiff relies, in part, on *Shipley* v. *Permanente Hospital* (1954) 127 Cal.App.2d 417 [274 P.2d 53, 48 A.L.R.2d 964], where the plaintiff was allowed to impeach an adverse verdict by affidavits that one juror had stated that he would not vote against a defendant doctor because "a verdict against Dr. Hallet would blast his professional career." We need not here consider whether the *Shipley* case is still law, in light of the comments on that opinion in *Kollert* v. *Cundiff* (1958) 50 Cal.2d 768, 773 [329 P.2d 897],[3] nor whether the case is distinguishable on other grounds,[4] since there is here present a fact which, in our opinion, removes any possibility of claiming a concealment on *voir dire.* The trial counsel for plaintiff asked Mr. Gardina: "Would you hesitate in any way if you felt that we were entitled to it not we, our client was entitled to a judgment of a substantial amount to award her that, which you felt she was entitled to?" Mr. Gardina answered: "Yes." If this answer was the one intended, it is clear that there was no concealment of bias, either intentional or unintentional; if the answer given was a slip of the tongue, or resulted from a misunderstanding of the question, it was up to counsel to clear up that point. We cannot here rectify his omission and plaintiff is bound by the answer as given.

We conclude that the affidavits, read in the light of the *voir dire* examination, disclose no concealment of disqualifying factors within the rule above set forth.

---

[3]The *Shipley* case has been severely criticized for its statements that a verdict may be impeached for concealed bias even though the concealment was unintentional. (43 Cal.L.Rev. 729; 2 U.C.L.A. L.Rev. 278.)

[4]In *Shipley,* the bias was in favor of all doctors, irrespective of negligence; in the instant case, the plea was on behalf of the particular motorman (whom Gardina may have thought free from negligence) and, since we do not have a full record of the deliberations, may have been no more than a counterargument to some plea for sympathy for an elderly plaintiff. In addition, the statements in *Shipley* must be read in light of the fact that the court was asked to reverse a trial court order granting a new trial, with the usual intendments in favor of such an order, whereas we are asked to reverse an order denying a new trial.

## II
### Failure to Permit Evidence
### On Company Safety Rules

Plaintiff attempted to introduce into evidence the rules and regulations of the Los Angeles Metropolitan Transit Authority in regard to assisting elderly, blind and physically handicapped persons.[5] The defendant objected, and this objection was sustained. The judge indicated that the rule was not relevant, because he believed that the failure to follow company rules relating to treatment of passengers did not support the plaintiff's theory of liability, which was that the motorman did not operate the car or the door properly.

█ It is settled law in California that company safety rules are admissible as a circumstance to be considered in determining negligence. (*Powell* v. *Pacific Electric Ry. Co.* (1950) 35 Cal.2d 40 [216 P.2d 448]; *Campagna* v. *Market St. Ry. Co.* (1944) 24 Cal.2d 304 [149 P.2d 281]; *Davis* v. *Johnson* (1954) 128 Cal.App.2d 466 [275 P.2d 563]; *Holder* v. *Key System* (1948) 88 Cal.App.2d 925 [200 P.2d 98]; *Simon* v. *City & County of San Francisco* (1947) 79 Cal.App.2d 590 [180 P.2d 393].) █ Ordinarily, the determination of the applicability to the factual situation and consequent admissibility of rules of a common carrier in matters affecting the safety of passengers rests largely in the discretion of the trial court, and will be reversed only if a clear abuse of such discretion is shown (*Shipman* v. *United Electric Rys. Co.* (1944) 70 R.I. 454 [40 A.2d 730].) █ In any case, the court in the case before the bench did instruct the jury on a carrier's duty to the disabled. The court said: ''With respect to your request for rereading of an instruction which deals with, as you put it in your question, the instruction concerning special care of elderly passengers. Listen closely:

'' 'When a carrier knows, or in the exercise of its duty would know, that a passenger . . .[6] has some impairment of

---

[5] ''Elderly, blind and physically handicapped persons and small children should be assisted in boarding or alighting and to the sidewalk, if necessary, offer assistance but never place hands on passengers if they do not wish to be assisted.''

[6] Plaintiff had requested BAJI Instruction No. 204-L which, at the point indicated, includes the words ''is ill or,'' and the briefs quote the instruction given as though those words had been included. In fact, as an examination of the original file discloses, the trial court had, on its own motion, deleted the words in question and had given the instruction with that modification and in the language apearing in the reporter's transcript and as quoted in the text of this opinion.

faculty or is feeble or otherwise handicapped or disabled, it is the carrier's duty to give special attention to the needs of such a passenger as they involve her safety and as that safety might be affected by the management of the streetcar; and, having the passenger's safety as an object, it is the carrier's duty to render such care and assistance as are commensurate with the reasonable needs of such a passenger's condition.' '' Thus, any error in excluding evidence relating to safety rules, if in fact such exclusion was error, was cured by the judge's instruction on special care of feeble persons.

The judgment is affirmed; the purported appeal from the order denying a new trial is dismissed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1966.