MOSS, J.
Defendant condemnees appeal from a judgment awarding them $132,188.25 plus costs for property taken from them for highway purposes and for severance damages to their remaining property. The jury awarded $116,939.65 for the property taken and $15,248.60 for severance damages.
Appellants contend on appeal that the judgment should be reversed on two grounds: (1) that it was error to exclude, as an element to be considered in determining the fair market value of the remaining property for the purpose of computing severance damages, evidence that the property would become subject to forced dedication as a consequence of the proposed taking, and (2) that appellants were denied a fair trial and due process of law by reason of misconduct and irregularity in the proceedings of the jury. We shall discuss the facts which relate to each of these contentions separately.

Severance Damages

Appellants own an 8.36-acre tract of vacant land in the City of West Covina immediately south of the San Bernardino Freeway in the vicinity of the Vincent Avenue interchange. The property is bounded on the north by Garvey Avenue, a frontage road which runs generally east and west along the southern edge of the freeway. Direct access to Garvey Avenue from the property is barred by an easement. To improve traffic flow the state proposes to close Garvey Avenue in the vicinity of the Vincent Avenue interchange and to reroute east-west surface traffic south onto Center Street.
The proposed improvement with respect to which this action was commenced will extend Center Street across appellants’ property so as to divide it roughly in half. The state proposes to take a 40-foot strip across appellants’ property on which it plans to construct a roadway 32 feet wide with dirt shoulders on each side.
At the time of the taking Center Street ran approximately due west at right angles to the western boundary of appellants’ property. Center Street was one block long, was improved with curbs and sidewalks, and occupied an 80-foot wide right-of-way. The extension of Center Street across appellants’ property was designed by the state authorities in collaboration with the city engineers of West Covina. The *378 parcel is being taken by the state for the city as an extension of Center Street and will be operated and maintained by the city as a city street. The extension of Center Street across appellants’ property was, at the time of trial, shown on existing maps of the City of West Covina as a proposed 80-foot street.
Under its applicable ordinance the City of West Covina has authority to require the dedication of rights-of-way for adjacent streets and the improvement of the extension of Center Street through appellants ’ property as a condition of approving a plan for the development of the property. When a street is shown on a city’s master plan that has not yet been developed it happens frequently that the city will wait until a permit for development of the area is applied for and then require the developer to give up or dedicate the land needed for the mapped street. Buyers of property are aware of this practice.
The trial court refused to allow the appraisers or the jury to consider, as an element affecting the value of appellants’ remaining property, evidence that the City of West Covina would probably require as a condition of any permit to develop or use that property the dedication of the additional land necessary to widen the strip being taken by the state to a width of 80 feet.[1]
Appellants argue that the jury was entitled to and should have been allowed to consider in fixing severance damages those factors which a buyer would take into consideration in arriving at a fair market value were he contemplating a purchase of the remaining property. (People v. Donovan, 57 Cal.2d 346, 352 [19 Cal.Rptr. 473, 369 P.2d 1].) They say that an informed buyer would discover and give serious consideration to the fact that before the land could be put to any use, a permit from the city would have to be obtained, and that as a condition of getting that permit it is probable that a 40-foot strip along the whole length of Center Street across the property would have to be dedicated to the city without recompense. The effect of such consideration, they conclude, would be depreciative of the price the purchaser would pay and, therefore, of market value.
We have concluded, however, that although appellants may *379 have correctly evaluated the mental processes of a prospective buyer of their remaining property, the ruling of the trial court was correct. In reaching this conclusion we assume that appellants would have been able to prove, had they been allowed to do so, that the City of West Covina will probably require, as a condition of granting a permit to develop appellants’ remaining property, that a strip of land be dedicated to widen Center Street across the property to 80 feet, and that the probability of such forced dedication was caused by the rearrangement of the Vincent Avenue interchange.
It is beyond question today that well-recognized property values may be substantially impaired by certain kinds of governmental action without payment of compensation. (Consolidated Rock Products Co. v. City of Los Angeles, 57 Cal.2d 515 [20 Cal.Rptr. 638, 370 P.2d 342], appeal dismissed 371 U.S. 36 [9 L.Ed.2d 112, 83 S.Ct. 145] (1962); see Van Alstyne, Statutory Modification of Inverse Condemnation: the Scope of Legislative Power, 19 Stan. L. Rev. 727, 778-779.)
Within judicially declared constitutional minimum standards, see Sneed v. County of Riverside, 218 Cal.App.2d 205 [32 Cal.Rptr. 318] ; Kissinger v. City of Los Angeles, 161 Cal.App.2d 454 [327 P.2d 10], hearing denied) the legislative power may be exercised to inflict economic loss where necessary to accomplish a legitimate public purpose. Thus, it is established that an uncompensated dedication of land for public use can constitutionally be required by a local planning body as a condition of giving official approval to private development of other property. (Ayres v. City Council of Los Angeles, 34 Cal.2d 31 [207 P.2d 1. 11 A.L.R.2d 503]; Southern Pac. Co. v. City of Los Angeles, 242 Cal.App.2d 38 [51 Cal.Rptr. 197]; cf. Bringle v. Board of Supervisors, 54 Cal.2d 86 [4 Cal.Rptr. 493, 351 P.2d 765].) In Ayres it was held that a city may constitutionally require the dedication of land for the widening of an existing street as a condition of its approval of a subdivision map where such condition is reasonably related to the increased traffic and other needs of the subdivision. It is no defense to the conditions imposed that their fulfillment will incidentally also benefit the city as a whole. (34 Cal.2d 31, 41.) The decision of a planning body to require dedication for street widening purposes will not be judicially reversed even when it appears that the dedication was made necessary by the general growth of the community. (Southern Pac. Co. v. City of Los Angeles, supra, 242 Cal.App.2d 38, 45-46.) The reason for judicial restraint *380 in this area was stated by the California Supreme Court in Consolidated Rock Products Co. v. City of Los Angeles, supra, 57 Cal.2d 515, at 522 as follows: “This principle of the elasticity of the application to be given to settled constitutional principles finds its echo in the language of this court in Miller v. Board of Public Works, supra, 195 Cal. at page 485 [234 P. 381, 38 A.L.R. 1479]: ‘Thus it is apparent that the police power is not a circumscribed prerogative, but is elastic and, in keeping with the growth of knowledge and the belief in the popular mind of the need for its application, capable of expansion to meet existing conditions of modern life and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. In brief, “there is nothing known to the law that keeps more in step with human progress than does the exercise of this power.” ’
“As a corollary to this recognized principle of the capacity of the police power to meet the reasonable current requirements of time and place and period in history is the equally well settled rule that the determination of the necessity and form of such regulations, as is true with all exercises of the police power, is primarily a legislative and not a judicial function, and is to be tested in the courts not by what the judges individually or collectively may think of the wisdom or necessity of a particular regulation, but solely by the answer to the question is there any reasonable basis in fact to support the legislative determination of the regulation’s wisdom and necessity ? ’ ’
If the City of West Covina should decide to compel dedication for the purpose of widening Center Street, appellants’ property will not be thereby taken or damaged within the ■purview of the constitutional rule requiring payment of compensation. To the extent that the widening of Center Street is required by the proposed development of the property, the property will be benefited thereby and not damaged. To the extent that the widening is made necessary by present and future traffic conditions in the neighborhood, any damage caused thereby is noncompensable because it results from a risk shared by all property owners.
Therefore, if the decision of the City of West Covina to compel dedication of a strip of appellants’ remaining land proves reasonably necessary when considered in the light of a proposed plan of development of that property and the traffic requirements of the surrounding community, the city will not have to pay for the strip of land that is dedicated. On the other hand, if the decision to require dedication is shown to be *381 unreasonable and arbitrary in the light of all the surrounding circumstances, the city will not be permitted to widen the extension of Center Street without paying for the strip of land needed to accomplish that purpose. (Kissinger v. City of Los Angeles, supra, 161 Cal.App.2d 454, 460-463, hearing denied. ) The proper proceeding in which to test the power of the city to force dedication to widen Center Street is one brought after such condition has been imposed. At that time the reasonableness of the city’s action can be tested with a specific plan of development in mind. If, instead of opposing dedication, the owners of appellants’ remaining property elect to dedicate in return for whatever advantages the city may offer toward the development of the property, they should not be permitted to charge the state for the cost to them of doing so. If appellants were allowed to recover the cost of dedication in this proceeding, the result would be to subsidize their possible additional advantages at the expense of the state. (County of Santa Clara v. Curtner, 245 Cal.App.2d 730, 749 [54 Cal.Rptr. 257].)
We recognize that in the computation of severance damages it is proper to consider the cost of necessarily relocating improvements on the land not taken so as to place the owner as nearly as possible in the position he was before the taking. (City of Riverside v. Kraft, 203 Cal.App.2d 300, 303 [21 Cal.Rptr. 425] ; see People v. Hayward Bldg. Materials Co., 213 Cal.App.2d 457, 465 [28 Cal.Rptr. 782].) Appellants do not contend, however, that they will have to widen Center Street in order to restore their property to the condition it was in before the taking. Indeed, it appears that they could not make such a contention because the proposed closing of Garvey Avenue and diversion of its traffic onto Center Street will result in no loss of access to appellants’ property since it had no access to Garvey Avenue before the construction of the proposed improvement.
We find precedent for our conclusion that the ruling of the trial court was correct in County of Santa Clara v. Curtner, supra, 245 Cal.App.2d 730 [hearing denied]. In Curtner the property of the condemnees was bordered on the south by Alma Street which the county proposed to widen and convert into a freeway. The county proposed to take a strip of the condemnees’ land abutting on Alma Street for that purpose. In order to compensate for this loss of access to Alma Street expected to be caused by the construction of the proposed freeway, the City of Mountain View adopted a plan for widen *382 ing and extending other city streets including some that abutted upon the condemnees’ remaining property. The condemnees argued, as do appellants here, that since the city’s decision to widen the streets on their remaining land was caused by the construction of the highway improvement, the damages accruing by reason thereof were a proper element to be considered in computing severance damages. The Court of Appeal rejected this contention and held that it was error to allow the appraisers and the jury to consider evidence of the city’s proposed plan.
On the authority of County of Santa Clara v. Curtner, supra, and for the reasons stated above, we conclude that the trial court did not commit error in refusing to admit evidence concerning the probability that the City of West Covina would require dedication of a strip of land to widen the extension of Center Street.

Misconduct of the Jury

During the voir dire examination of the jury, Aksel Nielsen, who later became foreman, did not disclose that he had at that time attended seven weekly classes of a twelve-week course in real estate appraisal. While Mr. Nielsen was in the jury box, but before he was individually examined, a number of questions were asked of the other jurors and answered by them in a way that negated any knowledge of real estate appraisal or valuation or any other potentially disqualifying opinion, connection or experience. One of these questions was whether anyone in the juror’s family was an attorney. A juror who preceded Mr. Nielsen on voir ¿lire answered this question negatively but added that he was taking a night school course in real estate law. He was then asked if “they have anything in that course relative to evaluation of property?” The juror answered, “No, not yet.” Other questions asked were if the juror or any member of his family or any close friends or relatives were in the real estate business in any capacity or in the business of appraising property ■ if he had any preconceived ideas about property valuation; if he knew the appraisers who were to testify, their names being given; and if he knew that in a case such as this one “the evidence comes before you by way of the opinions of real estate men ...” and, because of that fact, if before he would accept or reject an opinion tendered by such a witness, he would consider if the reasons supporting that opinion were good or bad. Nothing in the answers given by the other jurors disclosed any connection, direct or indirect, with real estate *383 valuation or appraisal or any preconceived ideas on the subject. Mr. Nielsen was asked whether, if each of those questions were put to him, he would 11 answer the same as the others have answered 1 ’ ’ He replied that he would. In addition, Mr. Nielsen was asked whether there was anything he “could think of that would prevent him from being fair and impartial to both sides. . . .”, to which his reply was an unqualified “No.”
In the course of further voir dire of other jurors, both before and after Mr. Nielsen was individually questioned, the juror who had previously volunteered that he was taking a night course in real estate law was asked if he had come up yet against the law of eminent domain, and if he did would he remember to pay no attention to the instructor but only to the trial judge. He replied that he would. Another juror in response to the inquiry whether she would differently answer the questions asked the other jurors replied that she had an uncle who was a land appraiser with a San Francisco bank. She was then asked if she had ever discussed with him the principles of real estate appraisal; and when she indicated not having done so, she was asked if she would have “a completely open mind to weigh the evidence solely upon what [she] heard in this courtroom . . A third juror, who indicated he had taken some law courses, was asked if he had gone into evaluation, and replied that he had not.
Appellants made a motion for a new trial, one of the grounds of which was the misconduct of Mr. Nielsen and irregularity in the proceedings of the jury. In support of their motion appellants filed the depositions of Mr. Nielsen and Ralph Matheny, the instructor of the real estate course, affidavits of members of the real estate class, and affidavits of seven of the jurors. Affidavits of Mr. Nielsen and one other juror were filed in opposition to the motion. The motion was denied.
The following additional facts were uncontradicted: Mr. Nielsen attended the real estate course during the trial. Mr. Matheny, the instructor, was employed as an appraiser by the County of Orange. He told the class while Mr. Nielsen was in attendance that he was an appraiser. The course covered a variety of topics dealing directly with real estate appraisal and the qualifications and abilities of appraisers. Mr. Matheny told the class when Mr. Nielsen was present and before the time of the voir dire examination that members of the Ameri *384 can Institute of Real Estate Appraisers (called MAI) had to be of high standing in the profession.
The day before the verdict was returned the jury reported that it was unable to agree, with no prospect of reaching agreement.
There is some conflict in the affidavits as to the discussions that followed in the jury room. Seven jurors declared that after the note had been sent to the trial judge reporting the jury deadlocked, Mr. Nielsen told the jury that he had learned from very reputable higher authorities to whom he had talked that Mr. Di Filippo, one of appellants ’ appraisers, was a shady or disreputable character, not very well thought of by other appraisers. Mr. Nielsen and one other juror denied that he had advised the jury of any adverse information about Mr. Di Filippo. However, Mr. Nielsen admitted that he did refer to what he had learned in the appraisal course about appraisers’ qualifications. In his words, “. . . there was some who felt we should forget about the State Appraisers altogether because someone said they wouldn’t get the jobs unless they put their price low and at that time I mentioned that— that their qualifications were given and I understood from a course I was taking that Cox’s qualifications were very high and that we couldn't assume that he wasn’t a professional and would not be professional about his evaluation; that he wouldn’t be swayed whether or not he would get another job and that no one else—and the reason we talked about Di Filippo was that most of them felt that we should forget about the other one and take Di Filippo’s because he was a little lower and I pointed out that he did not have the qualifications apparently that Cox had and certainly we couldn’t justify to forget about the State Appraisers because ‘they’re just thinking about their jobs’ ...”
The declaration of appellants’ counsel disclosed that he did not know of the foregoing facts until after the rendition of the verdict.
Concealment by a juror during his voir dire examination of a state of mind which would prevent his acting impartially is misconduct constituting an irregularity for which a new trial may be granted under section 657, subdivisions 1 and 2, of the Code of Civil Procedure. (Estate of Mesner, 77 Cal.App.2d 667, 676 [176 P.2d 70]; Williams v. Bridges, 140 Cal.App. 537 [35 P.2d 407]; People v. Galloway, 202 Cal. 81 [259 P. 332]; Abercrombie v. Thomsen, 59 Cal.App.2d 331 [138 P.2d 701].) Concealment need not be intentional. (Ship *385 ley v. Permanente Hospital, 127 Cal.App.2d 417, 421-424 [274 P.2d 53,48 A.L.R.2d 964].)[2]
Affidavits of jurors may be received as to occurrences during the trial and the deliberations of the jury that tend to prove the existence of prejudice in the mind of a juror, which would prevent his acting as an impartial juror, where the bias or disqualification of the juror was concealed by false answers on voir dire. (Williams v. Bridges, supra; see Gray v. Robinson, 33 Cal.App.2d 177, 183 [91 P.2d 194]; Kollert v. Cundiff, 50 Cal.2d 768, 773 [329 P.2d 897].) This is a recognized exception to the general rule that affidavits of jurors may not be received to impeach the verdict except upon the ground that it was arrived at by resort to chance. (People v. Gidney, 10 Cal.2d 138, 146 [73 P.2d 1186]; Maffeo v. Holmes, 47 Cal.App.2d 292, 295 [117 P.2d 948] ; 23 Cal.L.Rev. 359.)
By the time the jury had retired to deliberate, Mr. Nielsen had an opinion that members of MAI had very high qualifications. He testified that this high opinion had not been formed from the evidence in the case, but rather from information he had received in his real estate course before he was examined on voir dire. The only inference possible from these facts is that at the time he was examined on voir dire, Mr. Nielsen had formed an opinion about the qualifications of real estate appraisers which could tend to prejudice his judgment of the ease and which he failed to disclose.
The questions propounded to him fairly called for such disclosure. (Estate of Mesner, 77 Cal.App.2d 667, 674-677 [176 P.2d 70].) In Mesner, a juror had an unfavorable opinion of one of the attorneys. He was asked if he knew any of the attorneys and if he knew of any reason why he could not fairly and impartially try the case. His negative answers to these questions were held to have been concealment of his biased attitude toward one of the attorneys. ‘1 The questioning of the jury,” it was held, “was sufficient to call for the disclosure of Mr. Hamilton’s [the juror] state of mind toward Mr. Cradiek [the attorney].” (77 Cal.App.2d 667, 677.) “The question which the juror answered in the negative is one customarily asked by courts and lawyers in the interrogation of prospective jurors, and it is an invitation to them to disclose such facts as Mr. Hamilton had in his mind.” (77 Cal.App.2d at 676.) If Mr. Nielsen had revealed that he was taking a course in real estate appraisal appellants’ attorney *386 could have questioned him further and thereby established the basis for a challenge for cause or an informed peremptory challenge.[3] (See Vallejo etc., R.R. Co. v. Reed Orchard Co., 169 Cal. 545, 558 [147 P. 238] [juror who admitted the fact of his employment by another railroad company might influence his verdict]; West Coast Securities Co. v. Kilbourn, 110 Cal.App. 293, 296-297 [294 P. 57] [juror prejudiced against a class of persons to which one interested in the ease belonged is not a proper juror].)
Furthermore, Mr. Nielsen violated his duty as a juror when he conveyed to the jury during its deliberations (and after he had reported that the jury was deadlocked) the information that Mr. Cox, one of the state’s appraisers, had higher qualifications than Mr. Di Filippo, one of appellants’ appraisers.
“ It is well established throughout the states of the union . . . that it is misconduct for a juror during the trial to discuss the matter under investigation outside the court or to receive any information on the subject of the litigation except in open court and in the manner provided by law. Such misconduct unless shown by the prevailing party to have been harmless will invalidate the verdict.” (Kritzer v. Citron, 101 Cal.App.2d 33, 36 [224 P.2d 808].) Mr. Nielsen received in his class information concerning methods of appraisal and qualifications of appraisers that bore directly upon the controlling issues in the case. This was misconduct. (Kritzer v. Citron, supra, 101 Cal.App.2d 33, 36; Walter v. Ayvazian, 134 Cal.App. 360, 363-365 [25 P.2d 526] [juror called a physician and received answers to questions bearing upon an issue of medical fact in the case]; see People v. Wong Loung, 159 Cal. 520, 523 [114 P. 829] [jurors read a newspaper account of the trial containing information that was not in evidence].)
The misconduct of juror Nielsen was prejudicial. The testimony as to market value and severance damages was sharply in conflict. The state’s experts testified that the market value of the land taken was in the range of $94,106 to $100,070 while appellants’ experts placed the range of market value between $150,768 and $171,987. The state’s experts testified that there was no severance damage while appellants’ experts were of the opinion that severance damages were in the range of $440,147 to $458,307. One of the state’s witnesses also found special benefits of $28,863. The verdict was for $116,939.65 for the taking and $15,248.60 for severance dam *387 ages and there were no special benefits. The verdict was nine to three. Mr. Nielsen voted with the majority. The verdict was returned the day after the jury had reported that it was deadlocked with no prospect of reaching agreement.
Mr. Nielsen’s vote was essential to the verdict. On voir dire he concealed facts from which his bias in favor of appraisers who belonged to MAI could have been discovered. The fact that he had such bias is indicated from the statement he admittedly made in the jury room concerning the relative qualifications of Mr. Cox and Mr. Di Filippo. Had he revealed his state of mind he might have been excused. The jury would not then have had upon it one member whose vote made the verdict possible and who had been influenced by and sought to influence the other jurors by information received out of court.
Mr. Nielsen admittedly told the jury that he understood from his appraisal course that the qualifications of Mr. Cox, one of the state’s appraisers, were very high. He made that statement when he learned that some jurors felt that the jury should disregard the opinions of the state’s appraisers altogether on the ground that they were biased in favor of the state. At that point, it was the duty of the jurors to evaluate the testimony of the expert witnesses solely from evidence adduced at the trial. The verdict indicates a rejection of appellants’ appraisal testimony in favor of a value much closer to the one fixed by the state’s appraisers. The prejudicial effect of Mr. Nielsen’s misconduct is thus apparent, (cf. Walter v. Ayvazian, supra, 134 Cal.App. 360, 364-365.)
Mr. Nielsen’s misconduct in imparting to the jury information received outside of court was proven by competent testimony. His receipt of the information was proven by his own deposition and that of the instructor of the course. His communication of the information to the jury was proven by his own deposition. Respondents did not object to the consideration by the trial court of Nielsen’s deposition, but to the contrary relied upon that testimony in opposing the motion for new trial. Therefore, any objection that respondents might have had based upon the possible application of the rule against the use of jurors’ affidavits to impeach the verdict, was waived. (People v. Evans, 63 Cal.App. 777, 782 [220 P. 309]; see People v. Black, 216 Cal.App. 2d 103, 114 [30 Cal.Rptr. 798].)
The evidence before the trial court was uncontradicted that Mr. Nielsen concealed on voir dire examination *388 that he had an opinion which could tend to prejudice his judgment of the case, and that he imparted to the jury during its deliberations information that he had received outside the trial concerning the relative qualifications of the appraisers who had testified. The prejudice resulting from this misconduct was apparent as we have discussed above. Therefore, the trial court abused its discretion in denying appellants’ motion for a new trial.
The judgment is reversed.
Ford, P. J., concurred.

Appellants asked for a ruling on the admissibility of such evidence at the outset of the trial. The procedure followed by appellants was a practical and proper way to raise the issue. (Sacramento, etc. Drainage Dist, ex rel. State Reclamation Roard v. Reed, 215 Cal.App.2d 60, 68 [29 Cal.Rptr. 847].)

A statement in. Shipley on another point was disapproved in Kollert v. Cundiff, 50 Cal.2d 768, 773 [329 P.2d 897].

Appellants did not use all of their peremptory challenges.